# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 12-171** |
| **KURT E. MIX** | **SECTION "K"(1)** |

## ORDER AND OPINION

Before the Court is the "Motion for an Order Requiring the Government to Produce Exculpatory Material Pursuant to *Brady v. Maryland*" filed on behalf of defendant Kurt E. Mix (Doc. 92). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, grants the motion in part.

### Background

BP plc ("BP") employed Kurt Mix as a drilling engineer at all relevant times herein. On April 20, 2010, the *Deepwater Horizon,* a drilling rig leased by BP and assigned to complete work on the Macondo well in the Gulf of Mexico, exploded following a blowout of the well. As a result of the well blowout, oil poured out of the well and into the Gulf of Mexico until July 15, 2010. Following the explosion of the Macondo well, Kurt Mix participated in the effort to halt the flow of oil from the well, including working on the "Top Kill" project which was designed to "kill" the well. In the course of his efforts, Mr. Mix worked and communicated with other BP employees and communicated with employees of agencies of the United States including the United States Coast Guard, the Minerals Management Service,[1] the United States Geological Survey, and NASA, as

---

[1] The Minerals Management Service is now denominated the Bureau of Ocean Energy Management, Regulation, and Enforcement.

well as with employees of Lawrence Livermore and Sandia National Laboratories, quasi-governmental agencies.

Shortly after the well exploded, BP issued to Kurt Mix, among others, a "Legal Hold Notice" directing him to retain all records relevant to the Macondo well incident. In the wake of the explosion, various entities including the Department of Justice and the United States Securities and Exchange Commission began investigations into the disaster.

On September 22, 2010 a BP vendor contacted Mr. Mix to schedule a time to collect his data. Mr. Mix met with the vendor's representative on September 27, 2010, and the vendor's representative collected hard copy documents from Mr. Mix. Thereafter on October 4, 2010, Mr. Mix allegedly deleted a string of text messages from his phone which included messages to and from BP's Drilling Engineering Manager for the Gulf of Mexico ( "Supervisor").

On August 17, 2011, a representative of BP's vendor contacted Mr. Mix and scheduled a meeting for August 22, 2011 to collect additional data. On August 19, 2011, prior to that scheduled meeting, Mr. Mix allegedly deleted a string of text messages to and from a BP outside contractor ("Contractor"). As scheduled, on, the BP vendor collected date from Mr. Mix's iPhone and created a forensic image of the phone.

On May 2, 2012, a grand jury returned an indictment against Mr. Mix charging him with two count of obstruction of justice in violation of 18 U.S.C. §1512(c)(1), one related to the alleged October 4, 2010 deletion of the text messages with Supervisor and one related to the alleged August 19, 2011 deletion of text messages with Contractor. On May 26, 2012, defendant's counsel sent counsel for the Government a letter requesting that the Government produce "documents, information, and other materials" in twelve (12) categories of documents pursuant to *Brady v.*

*Maryland*, 373 U.S. 83 (1963) and other authority. Thereafter the Court issued its Scheduling Order requiring the Government produce to the defense all non-expert discovery by June 29, 2012.

On June 29, 2012 the Government produced approximately 20,000 documents to Mr. Mix. However, the Government did not produce documents in all of categories requested by Mr. Mix concluding that the documents in the unproduced categories were irrelevant. In its cover letter accompanying its production of documents, the prosecution stated that "[t]he government acknowledges its duty to produce Brady material. If the government identifies any material requiring disclosure under Brady, it will be produced to you." Doc. 103-2, p. 4.

Subsequently defendant filed this motion seeking an order that the Government produce, pursuant to *Brady*, documents within the four categories listed below:

1. Documents reflecting any communications regarding "flow rate" or Top Kill between BP and any government agent, employee, official, or agency prior to October 4, 2012.
2. Documents reflecting any presentations, videos, measurements, briefings, or interviews regarding "flow rate" or Top Kill provided by BP to any government agent, employee, official, or agency prior to October 4, 2010.
3. Documents reflecting the awareness of any government agent, employee, official, or agency regarding "flow rate" or Top Kill prior to October 4, 2010.
4. A list of government agents, officials, or employees who had real-time access to any video feed or other stream of data or information regarding Top Kill or "flow rate," including but not limited to those who were present at BP's control center in Houston during the Macondo Incident response effort, including Top Kill.

During the oral argument on this motion, the Court noted its concern about the broadness of defendant's request for production. Counsel for defendant indicated that a more "tailored" request for production could be submitted. Following oral argument, the Court took the motion under advisement.

After the hearing, the defendant submitted a "Proposed Protocol" for the disclosure of the

alleged *Brady* material. Doc. 142. In that protocol, the defendant narrowed his request to the following:

> 1) The e-mail records from April 20, 2010 through October 4, 2010, and paper files of the nineteen (19) Government officials, employees, and agents identified by defendant who were most closely involved in the day-to-day Macondo relief effort activities[2];
>
> 2) The grand jury transcripts, civil deposition transcripts, interview notes, and interview memoranda of fifty (50) government officials, employees, and agents "who were aware of flow rate and Top Kill information between April 20. 2010 and October 4, 2010, either because Mix and the BP colleagues with whom Mix was working closely provided such information or because BP (with Mix's knowledge) had granted them access to the Macondo Well and/or BP's proprietary data streams."[3] Doc. 142, p. 4-5. Specifically defendant wants the following 1) transcripts of testimony the named individuals gave to the grand jury empaneled to investigate BP or that indicted defendant; 2) transcripts of depositions the named individuals gave as part of MDL #2179 *In re Oil Spill by the Rig "Deepwater Horizon" in the Gulf of Mexico*; and notes and memoranda memorializing interviews of the identified individuals

---

[2] Defendant identifies the following nineteen individuals: Bryan Domangue, Lars Herbst, John McCarroll and Michael Saucier (Department of Justice); John Benner, Douglas Blakenship, Ronald Dykhuizen, Tom Hunter, Arum Majumdar, Charles Morrow, Scott Perfect, Jim Redmond, Mike Stone, Marjorie Tatro, Sheldon Tieszen, and Derek Wapman (Department of Energy); Rear Admiral Mary Landry (U.S. Coast Guard); Jack Bullman (NASA); and Marcia McNutt (Flow Rate Technical Group).

[3] Defendant identifies the following individuals in this request for information: David Behler, Bryan Domangue, Lars Herbst, Lance LaBiche, Don Maclay, John McCarroll, Martin Rinaudo, David Troquet, Troy Trosclair, Secretary Ken Salazar, Michael Saucier, and Nicholas Wetzel (Department of Interior); John Benner, Thomas Blanchette, Douglas Blakenship, Secretary Stephen Chu, Ronald Dykhuizen, George Guthrie, Tom Hunter, Arum Majumdar, Charles Morrow, Scott Perfect, Arthur Ratzel, Jim Redmond, Mike Stone, Marjorie Tarto, Sheldon Tieszen, and Derek Wapman (Department of Energy; Admiral Thad Allen and Rear Admiral Mary Landry (U.S. Coast Guard); Jack Bullman (NASA); Roger Clark, Paul Hsieh, Victor Labson, Mark Sogge (U.S. Geological Survey); Alberto Aliseda, Paul Bommer, Peter Cornillon, Pedro Espina, Juan Lasheras, William Lehr, Ira Leifer, Marcia McNutt, James Riley, Omer Savas, Steve Werely, and Poojitha Yapa (Flow Rate Technical Group); Richard Camilli, Andy Bowen, and Christopher Reddy (Woods Hole Oceanographic Institution).

> that the prosecution team or its agents conducted as part of any civil or criminal investigation against BP or any of its employees.
>
> 3) The pre-segregated documents relating to flow rate either initially withheld by the Government or still being withheld in the civil MDL, on the grounds of "deliberative privilege"; and
>
> 4) Other pre-segregated files in the possession, custody, or control of the prosecution team relating to or reflecting BP's sharing of flow rate and/or Top Kill information with government personnel.

In its "Response to the Defendant's Proposed Protocol with Respect to the Disclosure of Brady Material" (Doc. 143), the Government agreed to the following:

> 1) "The Government will conduct electronic searches of all documents in the possession of the Deepwater Horizon Task Force that have any reference to defendant Mix's name and will produce to the defendant any resulting records. The documents to be searched will include the Civil Division database to which the Task Force has access."
>
> 2) "The Government will produce the memoranda of interviews conducted as part of its criminal investigation of the following individuals identified by the defendant in his proposed protocol: Rear Admiral Mary Landry, William Lehr, Marcia McNutt, David Troquet, Michael Saucier, Nicholas Wetzel, Ronald Dykhuizen, Charles Morrow, Richard Camilli, and Chris Reddy."
>
> 3) "The Government will produce the requested civil deposition transcripts in connection with MDL #2179."

Doc. 143, p. 12-13. Additionally, the Government stated that it does not have any grand jury transcripts of any individuals identified by Mix in his "Proposed Protocol" and that it does not have memoranda of interviews of other individuals identified by defendant except those identified above. Id.

Law and Analysis

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Evidence qualifies as "material" if "there is a 'reasonable probability' that the outcome of the trial would have been different if the evidence had been disclosed to the defendant." *United States v. Runyan*, 290 F.3d 223, 247 (5th Cir. 2002), citing *United States v. Bagley*, 473 U.S. 667, 682. 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *United States v. Valencia*, 600 F.3d 389, 418 (5th Cir. 2010), quoting *United States v. Brown*, 303 F.3d 582, 593 (5th Cir. 2002). In the context of a pretrial motion seeking production of *Brady* material, like that pending before this Court:

> [t]he question before trial is not whether the government thinks that disclosure of the information or evidence it is considering withholding might change the outcome of the trial going forward, but whether the evidence is favorable, and therefore must be disclosed. . . . The only question before (and even during) trial is whether the evidence at issue may be "favorable to the accused", if so, it must be disclosed without regard to whether the failure to disclose it would likely affect the outcome of the upcoming trial."

*United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005).

The crux of Mr. Mix's *Brady* argument is that the materials he seeks will provide evidence supporting his defense that he lacked motive to "corruptly" delete the pertinent text strings as charged in the indictment. Defendant opines that the alleged *Brady* material sought would show that numerous people involved in the Macondo well incident, including other BP employees and agents

6

and employees of the United States and various federal agencies, knew and had the same information regarding flow rates and Top Kill that Mr. Mix knew and had, and that given that knowledge by others, he had no plausible motive to "corruptly" delete the information. The mere fact that others involved in the Macondo well incident had the same knowledge regarding flow rates and Top Kill as Mr. Mix, does not in and of itself support a conclusion that the materials possessed by those individuals would be favorable to Mr. Mix and would therefore constitute material subject to disclosure under *Brady*. Without more, such material is not relevant to the issue of defendant's state of mind with respect to allegedly deleting the two text message strings. Such information can constitute *Brady* material, i.e., material "which may be favorable to the accused" only to the extent that Mr. Mix provided the information to agents and employees of the United States and various federal agencies or they provided information to him. To put it another way, the material which may be favorable to the accused with respect to his state of mind is only that material which Mr. Mix knew and shared with agents and employees of the United States and various federal or quasi-federal agencies and material which he knew agents and employees of the United States and various federal or quasi-federal agencies knew prior to the time of the alleged deletion of the test message strings. Materials in the form of statements, notes, and documents reviewed or prepared by BP personnel, government officials, employees and agents which were not shared with Mr. Mix cannot provide exculpatory evidence concerning Mr. Mix's intent.

The Court concludes that even though defendant's "Proposed Protocol" is more narrow than the scope of his original request for *Brady* material, based on the parameters outlined above, defednant's request continues to be overly broad both in terms of the number of individuals from whom materials are sought and the time frame for the materials sought. After careful consideration,

the Court finds that, the only materials relevant to Mr. Mix's state of mind are communications from Mr. Mix and communications from other BP personnel, government officials, employees and agents which were made where Mr. Mix was present. Therefore, pursuant to *Brady,* the Government must produce any notes and/or memorandum related to flow rate or Top Kill which were taken, distributed and/or presented by any attendee at the May 17, 2010 meeting attended by Kurt Mix at which he presented flow rate information. Additionally, the Government must produce a list of the attendees at the May 17, 2010 meeting. Accordingly,

**IT IS ORDERED** that defendant's "Motion for an Order Requiring the Government to Produce Exculpatory Material Pursuant to *Brady v. Maryland*" (Doc. 92) is Granted in part; the Government shall produce to defendant Kurt Mix not later than December 28, 2012*,* any notes, memorandum, and/or presentations related to flow rate or Top Kill which were taken, distributed, and/or presented by any attendee at the May 17, 2010 meeting attended by Kurt Mix at which he presented flow rate information, as well as a list of the attendees of that meeting.

New Orleans, Louisiana, this 11th day of December, 2012.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE