# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 12-171 |
| KURT E. MIX | SECTION "K"(1) |

## ORDER AND OPINION

Before the Court is the "Motion to Admit Under Federal Rule of Evidence 801(d)(2) the Department of Justice's Exculpatory Factual Assertions Confirming that Defendant Kurt Mix Personally Preserved and Produced the 'Smoking Gun' Documents That the Government Used in Charging BP PLC With Making False Statements Regarding Flow Rate" filed on behalf of defendant Kurt Mix (Doc. 144). Having reviewed the pleadings, memoranda, and relevant law, and having heard the oral argument of counsel at the hearing on the motion, the Court, for the reasons assigned, DENIES the motion.

### Background

The general background of this case is set forth in detail in the Order and Opinion granting in part defendant's "Motion for an Order Requiring the Government to Produce Exculpatory Material Pursuant to *Brady v. Maryland*" (Doc. 155), and therefore will not be restated herein. The following additional facts are relevant in analyzing defendant's motion:

- On November 15, 2012, the United States filed a 14 count bill of information against BP Exploration and Production, Inc. ("BP"), charging: a) 11 counts of seaman's manslaughter (18 U.S.C. §1115); b) one count of violating the Clean Water Act (33 U.S.C. §§1319(c)(1)(A) and 1321(b)((3)); c) one count of violating the Migratory Bird Treaty Act (16 U.S.C. §§703 and 707(a)); and d) one count of Obstruction of Congress (18

U.S.C. §1505).[1]
- The bill of information alleges that BP Exploration and Production, Inc. is "a wholly-owned subsidiary of BP plc, a multinational energy corporation...[,] was responsible for all of BP plc's deepwater oil and gas drilling activities in the Gulf of Mexico and oversaw the Exploration and Production Business Unit in the United States." *United States v. BP Exploration and Production, Inc.*, No. 12-292 (E.D. La.) (Doc. 1, p. 1-2).
- The BP bill of information contains the following allegations:

> 34. As described below, defendant BP, through Rainey and other BP Executives, consistently maintained that 5,000 BOPD was the "best guess" estimate, without disclosing internal BP information suggesting the flow rate was considerably higher.
>
> Defendant BP's Actual Estimates
>
> 35. In its engineering response to the Macondo oil spill, defendant BP did not rely internally on Rainey's contrived and inaccurate flow-rate numbers. Instead, defendant BP and its affiliated companies had numerous expert teams assessing the flow rate using sophisticated methodologies that focused on the conditions at the seafloor where the oil and natural gas were gushing out. These teams were generating flow-rate estimates much higher than Rainey's purported "best guess" of between 5,000 and 6,000 BOPD.
> 36. For example, one or about April 12, 2010, BP subsurface engineers, including Kurt Mix, separately charged, estimated "various release scenarios" with potential flow rates ranging from 64,000 to 146,000 BOPD (the "Subsurface" Team estimates."
>
> . . .
>
> The Rainey Memo
>
> 42. On or about May 17, 2010, defendant BP, through Rainey, prepared a memorandum purporting

---

[1] *United States v. BP Exploration and Production, Inc.,* No, 12-292 (E.D. La.).

to summarize the efforts that had been undertaken within Unified Command to estimate flow rate ("the Rainey Memo"). The Rainey Memo, which sought to justify BP's 5,000 BOPD estimate, was false and misleading in numerous respects, including:

. . .

d. Defendant BP, through Rainey, omitted other documents relating to flow-rate estimates that contradicted defendant BP's 5,000 BOPD estimate, including, among others, the work performed by . . . the Subsurface Team Estimates . . ..

. . .

46. On or about May 4, 2010, in response to a Congressional request for a briefing of members and staff of Congress, defendant BP, through Rainey, falsely informed the Subcommittee that 5,000 BOPD was the most accurate flow-rate estimate. Defendant BP, through Rainey, further stated to Congress that, while defendant BP had calculated a hypothetical "worst case" scenario of 60,000 BOPD, the worst case scenario was not possible, in part, because it assumed removal of the blowout preventer from the wellhead, which remained in place at that time. During the May 4, briefing, defendant BP, through Rainey, did not disclose any information that contradicted defendant BP's purported "best guess" of 5,000 BOPD, including the Bonn estimates and other BP internal information of which defendant BP, through Rainey, was aware indicating that the actual flow - not a hypothetical worst case scenario assuming the non-existent condition of the blowout preventer being removed - was much higher than 5,000 BOPD.

. . .

49. On or about May 24, 2010, defendant BP, through Rainey, caused to be submitted to the Subcommittee the BP Response, which appended the

> false and misleading Rainey Memo and its attachments, which were selected by BP, through Rainey. As a result of defendant BP's actions, through Rainey, in withholding information, and also providing false and misleading information, the BP Response made false and misleading statements to Congress, withheld and concealed information, and otherwise impeded Congress's inquiry and investigation. For example:
>
> . . .
>
> h. The BP Response omitted the Subsurface Team Estimates ranging from 64,000 to 146,000 BOPD.

Id.

Defendant urges that the cited factual allegations in the BP bill of information are exculpatory evidence admissible pursuant to Rule 801(d)(2). Defendant contends that the bill of information acknowledges that documents prepared, preserved, and produced by Mr. Mix to the Department of Justice ("DOJ") through a third party vendor "are the very documents that were the lynchpin for DOJ's criminal charges against BP and one of its senior executives." Doc. 144-1, p. 5. Based on that contention, Defendant asserts that "the BP information is irreconcilable with the charges . . . that Kurt Mix endeavored to obstruct the Government's criminal investigation into whether BP executives had provided the public with false and misleading flow rate estimates" by deleting text message strings. Id. at p. 2. The Government urges that the factual assertions in the BP bill of information are not admissible under Rule 801(d)(2) because they are neither inconsistent with the Government's position in this case nor exculpatory.

Law and Analysis

Federal Rule of Evidence 801(d)(2) states, in pertinent part:

> (d) Statements That Are Not Hearsay. A statement that meets the

following conditions is not hearsay:

. . .

>> (2) An Opposing Party's Statement. The statement is offered against an opposing party and:
>
>> (A) was made by the party in an individual or representative capacity;
>> (B) is one the party manifested that it adopted and believed to be true;

Under Rule 801(d)(2), "*[r]elevant* admissions of a party . . . are admissible when offered by an opponent. . . ." Michael H. Graham, *Federal Practice and Procedure*, §7015 (Interim 2011 Edition) (emphasis added). Thus, for evidence to be admissible under Rule 802(d)(2), the evidence must be either an admission of a party-opponent or a statement by an opposing part that the party manifested adopted and believed be true, <u>and</u> the evidence must be relevant under Rule 401 of the Federal Rules of Evidence. The Government does not deny that the BP bill of information, signed by four assistant United States Attorneys assigned to the Deepwater Horizon Task Force constitutes an "opposing party's statement" or that the bill of information is a statement the Government manifested that it adopted and believed to be true. Therefore, the first prong of the Rule 801(d)(2) inquiry is satisfied. The remaining inquiry is whether the factual assertions sought to be admitted by defendant qualify as relevant evidence. Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Mr. Mix grounds his defense on his contention that he lacked motive to "corruptly" delete the pertinent text message strings. Defendant urges that the documents he produced directly to the Government (through a third party vendor) are the "smoking guns" that provided the information

necessary for the Government to charge BP in the bill of information. Additionally defendant contends that the production of the "smoking gun" documents is inconsistent with the idea that he would corruptly deleted the text strings at issue.

The cited allegations from the BP bill of information are not relevant evidence. Those allegations do not address Mr. Mix's deletion of the email strings or his state of mind at the time of the deletions. Rather, the allegations refer to concerning work done by Mr. Mix and other subsurface engineers calculating flow rates and state that BP did not disclose that work to the American public or Congress. Nothing in the BP bill of information indicates that defendant directly produced to the Government the documents and information which the Government relied upon in alleging that BP possessed flow rate information which it failed to produce to Congress. The only specific reference to Mr. Mix in the BP bill of information states that "BP subsurface engineers including Kurt Mix, separately charged, estimated 'various release scenarios' with potential flow rates ranging from 64,000 to 146,000 BOPD (the 'Subsurface Team Estimates')." *United States v. BP Exploration and Production, Inc.*, No. 12-292 (Doc. 1, ¶ 36). Because the factual assertions in the bill of information do not identify the documents relied upon by the Government in charging BP or indicate that the Government relied upon documents produced by Mr. Mix in bringing criminal charges against BP, the factual assertions are not inconsistent with defendant's prosecution, nor are they exculpatory. In fact, the bill of information refers to only one document that has been indentified as having a connection to defendant. The bill of information states that "on or about April 22, 2010, BP subsurface engineers, including Kurt Mix, separately charged, estimated 'various release scenarios' with potential flow rates ranging from 64,000 to 146,000 BOPD . . ." Defendant attaches to his motion to documents he contends are exemplars of the "smoking gun" documents

6

prepared, preserved, and produced by Mr. Mix to DOJ through the third party vendor. One of those documents is an April 22, 2010 report generated by Mr. Mix entitled "Well Control Simulations" which includes flow rate estimates in excess of those being reported by BP at that time. Even considering the connection between that factual allegations concerning flow rate in the BP bill of information and the April 22, 2010 report generated and produced by Mr. Mix, the Court is not persuaded that the cited allegations in the BP bill of information constitute exculpatory evidence or evidence which is otherwise admissible. Moreover, the allegations in the BP bill of information are not relevant as the Government has not charged Mr. Mix with destroying or deleting any documents except the text messages described in the indictment charging him. Defendant's theory is too attenuated to conclude that the factual assertions themselves, as opposed to the documents produced, are relevant to Mr. Mix's defense

As previously noted, defendant, in support of its motion, attached several documents he created, preserved, and produced to the third party vendor that he asserts are exemplars of the "smoking gun" documents which serve as the basis for the BP bill of information. Because a ruling on the admissibility of those documents is not sought by defendant in this motion, the Court need not address at this time the admissibility of such documents, although indeed some of them may be relevant..

New Orleans, Louisiana, this 30th day of January, 2013.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE

7