UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                    CRIMINAL ACTION

VERSUS                                                      NO. 12-171

KURT E. MIX                                                 SECTION "K"(1)

## ORDER AND OPINION

Before the Court is the "Motion to Quash Subpoena" filed on behalf of the United States (Doc. 391) which seeks to quash a subpoena issued by defendant Kurt E. Mix to Stroz Friedberg, LLC ("Stroz Friedberg"). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, grants the motion in part and denies it in part.

The United States has identified Jeff Bolas of Stroz Friedberg as its digital forensic and technical expert and has provided defendant with a copy of an expert report dated June 25, 2012, as well as a supplemental report dated April 2, 2013. Pursuant to Federal Rule of Criminal Procedure 17(c), defendant issued a *subpoena duces tecum* to Stroz Friedberg seeking production of the following:

> 1. All communications from any current or former employee or agent of the U.S. Department of Justice ("DOJ") to any current or former employee or agent of Stroz Friedberg, LLC regarding work performed for the Kurt Mix matter, including but not limited to any instructions, guidelines, or requests made by DOJ with respect to Stroz Friedberg's review of, and reports about, the Kurt Mix and Jonathan Sprague iPhones, Mix's computer hard drive, and Mix's email account.
> 2. All contracts, agreements, or documents reflecting any benefits promised or made to Stroz Friedberg with respect to any work performed for DOJ regarding the Mix matter, including benefits promised or made by DOJ, BP, or any law firm retained by BP.

Doc. 391-2. The United States seeks an order quashing the subpoena contending, in part, that the

subpoena seeks materials protected from disclosure by Rule 16(a)(2) of the Federal Rules of Criminal Procedure. Additionally, the United States urges that the first request in the subpoena is properly quashed because the materials sought are not 1) relevant, 2) admissible, or 3)identified with specificity. With respect to the second request in the subpoena, the Government contends that the subpoena is unnecessary because the materials sought will be timely produced to the defendant as *Giglio*[1] material.

### Law and Analysis

Rule 16(a)(1)(G) of the Federal Rule of Criminal Procedure provides in pertinent part that:

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Defendant concedes that "[t]he Government has satisfied its obligations in this regard." Doc. 414, p. 5. However, defendant now seeks additional material from Stroz Friedberg.

Federal Rule of Criminal Procedure 16(a)(2) exempts from disclosure to the defendant "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." The Advisory Committee Notes to Rule 16(a)(2) state "that the phrase 'reports, memoranda, or other internal government documents made by an attorney for the government' was meant to incorporate the 'work product' language of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed.2d 451 (1947), into the rule to ensure that government attorneys'

---

[1] *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

litigation preparations are protected from discovery." *United States v. Mann*, 61 F.3d 326, 331 (5th Cir. 1995). The Supreme Court has opined that although Rule 16(a)(1)(c) [of the Federal Rules of Criminal Procedure] permits a defendant to examine documents material to the defense, under Rule 16(a)(2) he may not examine Government work product in connection with his case." *United States v. Armstrong*, 517 U.S. 456, 463, 116 S.Ct. 1485, 134 L.Ed.2d 687 (1996).

Defendant acknowledges that "[a]s a general legal matter . . . a party's pre-trial communications with an expert that it has 'retained or specifically employed to provide expert testimony in the case' constitutes privileged work product and [are] therefore presumptively immune from discovery." Doc. 414, p. 6. However, defendant asserts that communications between the Government and Stroz Friedberg are not privileged work product because BP, rather than the United States retained Stroz Friedberg.

The United States has submitted a declaration by Andrew M. Gessner, a partner with Kirkland & Ellis LLP, who represented "BP in relation to the [*Deepwater Horizon*] Task Force's investigations into the *Deepwater Horizon* incident." Doc. 418, Ex. 2. In his declaration Mr. Gessner states:

- "In 2011, the Task Force requested that BP produce various computers and electronic devices (including mobile phones), as well as copies (or "images") of the electronic data on certain computers and devices in connection with its investigation into the *Deepwater Horizon* incident."
- "In order to protect from disclosure material on the requested devices that might be subject to BP's attorney-client privilege or constitute BP's attorney-work product, BP and Task Force reached an agreement whereby BP would retain a computer forensics firm that was independent from BP (*i.e.,* that was not otherwise performing work for BP), and that was acceptable to the Task Force, to perform electronic searches and analyses of the requested items as described more fully below ("the Task Force Agreement")."

- "Under the terms of the agreement and protocol, the Task Force was to direct BP to send Stroz computers, devices (*e.g.* mobile phones) or images of computers and devices, that the Task Force wished to have analyzed. The Task Force would then be able to ask Stroz directly to conduct the particular electronic searches and/or analyses on these materials that it wished. It was understood that BP would not be privy to these communications between the Task Force and Stroz, nor would BP be privy to the nature of the searches and analyses conducted."
- "BP understood that it would not be privy to the nature of the searches and analyses conducted, nor to the communications between Stroz and the Task Force regarding those searches and analyses."
- "[U]nder the agreement and protocol, BP understood the Task Force could have confidential communications with Stroz and Stroz could maintain the confidentiality of those communications unless the Task Force directed otherwise."
- "Under the Task Force Agreement and the Stroz Protocol, BP understood that it was not to ask or direct Stroz to perform any searches or analyses of the subject device and images, and, in fact BP did not do so. Rather, the Task Force had the exclusive ability to direct Stroz's searches and analyses."
- Pursuant to BP's retention agreement with Stroz, BP paid the Stroz invoices related to Stroz's work performed pursuant to the Task Force Agreement and Stroz Protocol.

Doc. 418, Ex. 2. Additionally, the United States filed a "Certification of Edward M. Stroz" in which Mr. Stroz, Co-President of Stroz Friedberg LLC, stated that:

- "Stroz Friedberg is not permitted to disclose to BP or anyone else its communications with the Task Force or what requests have been made to the firm by the Task Force."
- "While performing this work for the Task Force over the last two years, Stroz Friedberg has understood that its communications with the Task Force were privileged and confidential, and Stroz Friedberg has not disclosed to BP any of its communications with the Task Force, nor has it disclosed the work it has undertaken at the direction of the Task Force (other than what Stroz Friedberg has included in the formal expert reports that were created for the Task Force)."
- "Pursuant to the agreement, BP has paid the bills of Stroz

> Friedberg, but at no time has BP directed or controlled the work that Stroz Friedberg was to do. All direction and control has come exclusively form the Task Force."

Based on this unrefuted evidence it is clear that, although BP selected Stroz Friedberg and has paid its bill, the work performed by Stroz Friedberg has been performed exclusively at the direction of the United States for the benefit of the United States. Thus, except for the actual hiring of Stroz Friedberg by BP and BP's payment of Stroz Friedberg, this arrangement exhibits the traditional hallmarks of a relationship between a party and its expert witness to provide expert testimony in a case. The Court notes that even though BP selected and hired Stroz Friedberg, the agreement between BP and the Task Force provided that BP would retain a computer forensics firm that was acceptable to the Task Force. Thus, the United States played some role in the selection of Stroz Friedberg. Defendant did not cite, nor could the Court locate any case law mandating that a party's communications with its experts are protected as attorney work product only if the party actually hired and paid the expert witness. Given that the United States approved Stroz Friedberg as the expert hired by BP and that Stroz Friedberg performed its work at the sole direction of the United States for the benefit of the United States, the Court concludes that Stroz Friedberg is the government's expert and agent for purposes of Rule 16(a)(2).

The Court now turns to analyzing whether defendant's first request for materials, as set forth in the subpoena qualifies as work product. As noted previously, defendant's first request for materials seeks:

> All communications from any current or former employee or agent of the U.S. Department of Justice ("DOJ") to any current or former employee or agent of Stroz Friedberg, LLC regarding work performed for the Kurt Mix matter, including but not limited to any instructions, guidelines, or requests made by DOJ with respect to Stroz Friedberg's review of, and reports about, the Kurt Mix and

> Jonathan Sprague iPhones, Mix's computer hard drive, and Mix's email account" seeks materials which qualify as exempt "work product."  Defendant has specifically stated that he seeks materials regarding "(1) any and all forensic analyses that Stroz Friedberg might have performed on Mix's electronic records, including his computer hard drive and e-mail account, [and] (2) comments or feedback that the Department of Justice might have provided Stroz Friedberg with respect Stroz Friedberg's drafting of its June 25, 2012 and April 2, 2013 reports . . .."

Doc. 414, p.5.

Rule 26(b)(4)(C) "extends work product protection to communications between a party's attorney and that party's testifying experts except to the extent such communications (1) relate to the experts compensation, (2) identify facts or data provided by the party's attorney and considered by the expert in forming his opinions, or (3) identify assumptions provided by the party's attorney and relied on by the expert in forming his opinions." *Innovative Sonic Limited v. Research in Motion, Ltd.*, 2013 WL  7755349 *2 (N.D. Tx. March 1, 2013). However, the protection of Rule 26(b)(4)(C) "is not absolute and can be overcome by a showing that would satisfy Rule 26(b)(3) to justify discovery of work product."  8 C. Wright & A. Miller, *Federal Practice and Procedure: Civil,* §2016.5 (2010).  The party must make a showing "that the party has a substantial need for the discovery and cannot obtain the substantial equivalent without undue hardship."  Fed. R. Civ. P. 26(b)(4)(C), Advisory Committee Notes, 2010 Amendments, subdivision (b)(4).  It is significant however that the Advisory Committee noted that even when a party makes a showing that it has a substantial need for the discovery and cannot obtain the substantial equivalent without undue hardship, that "the court must protect against disclosure of the attorney's mental impressions, conclusions, opinions, or legal theories under Rule 26(b)(3)(B)."  Fed. R. Civ. P. 26(b)(4)(C), Advisory Committee Notes, 2010 Amendments, subdivision (b)(4).

Defendant has represented that he knows that Stroz Friedberg "performed *additional* forensic analyses of Mix's electronic data sources" and stated that he thinks that there is "the possibility that Stroz Friedberg drafted or revised its June 25, 2012 and April 2, 2013 reports based on specific feedback from the Department of Justice."  Doc. 414, p. 4-5.  Additionally, defendant asserts that he "has reason to believe that Stroz Friedberg possesses additional relevant, *exculpatory* material regarding those additional forensic analyses, as well as other material that impeach the credibility of the statements that Stroz Friedberg made in its June 25, 2012 and April 2, 2013 reports.  Id. at 5.

Defendant's description in his brief of the information and materials he seeks via the subpoena is different than the materials actually requested by the subpoena.  Most notably, defendant states in its brief that Stroz Freidberg possesses "additional relevant, exculpatory material" regarding "additional forensic analyses" performed by it.  However, that information is outside the scope of the subpoena, as worded, which requests only communications from the Department of Justice to Stroz Friedberg, not communications from Stroz Freidberg to the Department of Justice or a listing of the forensic analyses performed by Stroz Friedberg, and the Court can address only the subpoena before it.

Defendant also indicated in his brief that he seeks "feedback" that Stroz Friedberg received from the Department of Justice regarding the expert reports drafted by Stroz Friedberg.  Any such "feedback would necessarily embody the prosecutor's mental impressions, conclusions, opinions, or legal theories. Such disclosure is prohibited.

As drafted, defendant's first request in the subpoena is quashed in its entirety.  The request for "all communications" is reasonably construed to request materials protected under the work

7

product privilege, and defendant has not made a substantial showing of the need for any such communications or shown that he cannot obtain the substantial equivalent without undue hardship.

With respect to the second category of information sought by defendant in the subpoena issued to Stroz Friedberg, the Court denies the motion to quash as moot.  The United States interprets the second category of information specified in the subpoena to seek "in substance, production of *Giglio* materials"  and has agreed to provide such *Giglio* materials" to defendant by the deadline set by the Court for the production of such materials.  Doc. 391, p. 8.  Defendant, in his "Response to Government's Motion to Quash Subpoena"  indicated that "to the extent the Government represents that, pursuant to *Giglio*, it intends to provide the defense two weeks before trial with all of the remuneration materials involved within the subpoena's second request" he is willing to withdraw his request for that material.  Doc. 414, p. 11-12.  The Court construes the Government's failure in its "Reply in Support of its Motion to Quash Subpoena" (Doc. 418) to state that it is unwilling to provide information concerning the remuneration paid to Stroz Friedberg as part of its *Giglio* production, as the Government's implied agreement to provide defendant with the information regarding the remuneration paid to Stroz Friedberg.  Therefore, the Court denies the motion to quash the production of the second category of material identified in the subpoena as moot.

New Orleans, Louisiana, this 25th day of July, 2013.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE