UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 12-171 |
| KURT E. MIX | SECTION "K"(1) |

### ORDER AND OPINION

Before the Court is the "Renewed Motion to Preclude Proposed Expert Testimony" filed on behalf of the United States of America (Doc. 384). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, denies the motion in part and grants the motion in part.

Background

The general background of this case is set forth in detail in the Order and Opinion granting in part defendant's "Motion for an Order Requiring the Government to Produce Exculpatory Material Pursuant to *Brady v. Maryland*" (Doc. 155), and therefore will not be restated herein. Additionally, the background relevant to the United States' prior motion to preclude the testimony of Terry Payne and Dr. David Cummings is set forth at length in the Order and Opinion denying the United States' "Motion to Preclude Proposed Expert Testimony" (Doc. 260). In that Order and Opinion, the Court ordered defendant "to make additional disclosures as to the testimony of Terry Payne and Dr, David Cummings." Id. Thereafter defendant filed additional disclosures for Terry Payne (Doc. 384-2) and for Dr. David Cummings (Doc. 384-3).

The United States seeks to exclude "almost all of the proffered expert testimony" of Terry Payne asserting that his proffered testimony "amounts to nothing more than an improper attempt

. . . to introduce fact testimony through an expert instead of through percipient witnesses with first-hand knowledge of the facts[]" and that the proffered testimony is not relevant. Doc. 384, p. 1. Additionally, the Government urges that Mr. Payne's general qualifications as a petroleum engineer do not qualify him as an expert with respect to deepwater drilling and "well kill" methods. With respect to Dr. David Cummings, the government seeks an order precluding him "from offering any opinion testimony that he has not already disclosed." Doc. 384. p.1.

Law and Analysis

1. Dr. David Cummings's Testimony

In this motion the United States does not seek to preclude any specific opinions being offered by Dr. Cummings, but rather seeks a general order precluding Dr. Cummings from offering any opinion testimony if the opinion offered has not been previously disclosed to the United States. The Court's prior Order and Opinion addressing the United States' motion to preclude the testimony of Dr. Cummings clearly established that Dr. Cummings will not be able to offer any expert opinions which have not been previously disclosed as required by Rule 16 of the Federal Rules of Civil Procedure. Considering the Court's prior Order and Opinion, it is unnecessary to enter at this time another order stating that Dr. Cummings will not be permitted to offer any expert opinion at defendant's trial which he has not disclosed to the defendant. At trial the United States may object to any expert opinions offered by Dr. Cummings which it thinks were not previously disclosed, and the Court will rule on any such specific objection. Therefore, the United States' motion is denied to the extent that it seeks an order with respect to the testimony of Dr. Cummings.

2. Testimony of Terry Payne

In a prior opinion the Court ordered defendant to provide additional disclosures including

specific details concerning Mr. Payne's opinions regarding "the variety of the variables affecting flow rate, why it was not possible to know the flow rate at the time of Top Kill, why models are distinct from flow rate estimates, and other opinions related to those matters." Doc. 260. Additionally, the Court ordered defendant to provide to the United States additional disclosures concerning Mr. Payne's opinion that "as of 10:25 p.m. CDT on May 26, 2010, one could not have known or concluded to a level of scientific certainty that Top Kill had not killed the well because the flow rate exceeded 15,000 BOPD and the orifice size was too large, or that further attempts" at the junk shot/Top Kill combination would not succeed in stopping the flow of oil." Id. at 10 (internal quotation and citation omitted). Defendant has now provided the United States with additional disclosures regarding those opinions.

### A) Federal Rule of Evidence 702 and *Daubert*[1]

The United States renews its challenge to Terry Payne's testimony as an expert witness asserting that it does not comply with Federal Rule of Evidence 702 and the standards announced by the Supreme Court in *Daubert*. Specifically the United States contends that Terry Payne's testimony is not admissible because "1) it seeks to introduce fact testimony through an expert instead of through percipient witnesses with first-hand knowledge of the fact; (2) it is irrelevant; and /or 3) Mr. Payne is not qualified to offer expert testimony." Doc. 384-1, p. 1.

"Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence. " *Hidden Oaks Limited v. City of Austin*, 138 F. 3d 1036, 1050 (5th Cir. 1998). The party seeking to introduce the expert testimony bears the burden

---

[1] *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2789, 125 L.Ed.2d 469 (1993).

of proving by a preponderance of the evidence that the proffered testimony complies with the requirements of Rule 702 of the Federal Rules of Evidence. *Mathis v. Exxon Corporation*, 302 F.2d 448, 459-460 (5th Cir. 2002), citing *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 1987). Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The rule reflects the Supreme Court's decisions of *Daubert* and *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999). *Daubert* charges trial courts to act as "gate-keepers" to ensure that the proffered expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589, 592-93, 113 S. Ct. at 2795, 2796. The relevant and reliable standard announced in *Daubert* for scientific expert testimony applies to all types of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. at 147, 119 S. Ct. at 1171.

*Daubert* provides a two-prong test for determining the admissibility of expert testimony. The court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595, 113 S. Ct. at 2796. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* Thus, the first prong of *Daubert* focuses on whether the expert testimony is based

4

on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595, 113 S. Ct. at 2797, 125 L.Ed.2d at 484. The second prong, i.e., whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert*, 509 at 591. Indeed, this examination is described in *Daubert* as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id., citing United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir. 1985). Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Mr. Payne's challenged expert testimony can be categorized into six topic areas:

- Topic No. 1 - "It was not possible to know the flow rate prior to, or during Top Kill because numerous variables affecting flow rate were unknown";
- Topic No. 2 - "Prior to Top Kill's execution, it was not possible to know whether Top Kill would succeed or fail because the flow rate was unknown and it was not possible to know whether 'junk shot' would sufficiently impede one or more of the well bore restrictions which, in connection with the injection of drilling mud, might successfully stem the flow of oil";
- Topic 3 - "As of 10:25 p.m. CDT on May 26, one could not have known or concluded to a level of scientific certainly that Top Kill had not killed the well because flow rate exceeded 15,000 BOPD and the orifice size was too large, or that further attempts at the junk shot/Top Kill combination would not succeed in stopping the flow of oil";
- Topic 4 - "Flow rate models are different from flow rate estimates";

- Topic 5 - "There are multiple, independent approaches to modeling and estimating the flow rate from a deep water blowout, and these results will not necessarily yield results that are consistent with one another. During the Macondo relief effort, there existed no universally accepted single technique for estimating the actual flow rate from a deep water blowout"; and
- Topic 6 - "Comparison between the allegedly corruptly deleted text messages and the documents preserved by Kurt Mix produced to the BP Legal Team."

Doc. 384-2.

### B. Topics 1, 2 and 4

The United States seeks to exclude Mr. Payne's testimony regarding Topics 1, 2 and 4, contending in part that the opinions do not constitute relevant evidence under Rule 401 of the Federal Rules of Evidence. The Court agrees. There is no doubt that in the weeks and months following the blowout of the Macondo well that there was great interest in and concern about the flowrate of the well and whether Top Kill would be succeed in extinguishing the flow of oil from the well. The Court takes judicial notice that following the blowout various investigations involving potential civil and criminal liability were commenced by Congress, the Securities and Exchange Commission, and other investigative bodies.

The proffered testimony with respect to Topics 1, 2 and 4 focuses on flowrate, Top Kill, and the differences between flowrate estimates and flowrate models. The gravamen of this case is not related to flowrates or Top Kill. This case involves charges of obstruction of justice related to the actions of Mr. Mix with respect to deletions from his iPhone on October 4, 2010 and on August 19, 2011. The critical factor in this case is defendant's state

of mind at the time of those deletions from his iPhone. The proffered expert testimony might well be relevant if the deletions forming the basis for the obstruction of justice charges had occurred at the time Top Kill was being executed, but it is not relevant evidence here, where the first deletion occurred several months after the well was brought under control and the October deletions occurred more than one year after that. Mr. Payne's opinions with respect to whether flowrate calculations were influenced by numerous unknown variables and whether it was possible to know the flow rate prior to, or during Top Kill and whether prior to Top Kill's execution, it was possible to know whether Top Kill would succeed or fail do not have any tendency to make it more or less probable that defendant acted with corrupt intent, do not tend to show his innocence, and will not assist the jury in drawing any conclusions concerning defendant's state of mind at the time of the deletions which form the basis of these criminal charges.

The issues concerning flow rate and Top Kill may be pertinent to the various inquiries conducted by governmental agencies, including that which was ongoing by the Securities and Exchange Commission, to determine whether BP intentionally led the government to believe that the flow rate from the Macondo well following the blowout was less than the flowrate represented in calculations possessed by BP. Additionally, the focus of any "foreseeable" grand jury proceeding or other proceeding at that time was not whether calculating flowrate was a precise science when there are unknown variables in the calculation equation, but rather whether the flowrates disseminated by BP were artificially lower than the flowrates calculated by BP. To put it another way, if there had been no concerns about whether BP was intentionally under reporting the flowrate from the

Macondo well, there would not have been an investigation as to the flowrate calcuations. The methodology for the flow rate calculations does not provide insight into Kurt Mix's state of mind many months later at the time of the deletions from his iPhone, and it is defendant's state of mind at the time of those deletions which is relevant and critical to the outcome of this case.  Therefore, Mr. Payne's expert opinions related to Topics 1, 2, and 4 are not relevant in this proceeding, and Mr. Payne will not be permitted to testify concerning those opinions.

      C.  Topic 3

The United States moves the Court to preclude Mr. Payne from providing expert testimony that:

> As of 10:25 p.m. CDT on May 26, 2010, one could not have known or concluded to a level of scientific certainty that Top Kill had not killed the well because flow rate exceeded 15,000 BOPD and the orifice size was too large, or that further attempts at the junk shot/Top Kill combination would not succeed in stopping the flow of oil.

Defendant seeks to offer this testimony in connection with a text message sent by Mr. Mix to BP's Drilling Engineering Manager for the Gulf of Mexico at 10:25 p.m. CDT on May 26, 2010, the first night of the Top Kill operation, which states "[t]oo much flowrate–over 15000 and too large an orfice.  Pumped over 12800 bbl of mud today ply 5 separate bridging pills.  Tired ... Going home and getting ready for round three tomorrow."   The Court will not permit Mr. Payne to offer the cited opinion.  That opinion goes to Mr. Mix's state of mind on May 26, 2010 at the time he sent the text message.  Defendant's state of mind of May 26, 2010 is not relevant to this case; it is Mr. Mix's state of mind on the date of the deletions that form the basis for the criminal charges which is at issue, and evidence

8

concerning his state of mind at times other than that is not relevant.

       D.  Topic 5

Defendant also disclosed to the United States Mr. Payne's opinion that  "[t]here are multiple, independent approaches to modeling and estimating the flow rate from a deep water blow out, and these results will not necessarily yield results that are consistent with one another.  During the Macondo relief effort, there existed no universally accepted single technique for estimating the actual flow rate from a deep water blowout." Such testimony is not properly the subject of expert testimony; it is a matter of fact.  Various fact witnesses will undoubtedly testify concerning the different approaches used to model and estimate the flow rate from the Macondo well, and it will be readily apparent that different flow rates were calculated using different models.  Expert testimony related to the opinion expressed in Topic 5 would be redundant of fact witness testimony concerning these matters, and is not necessary to assist the trier of fact to understand the material.  The testimony of the fact witnesses will not require interpretation by an expert.  Moreover, as the Court previously opined, because the issue involved herein is not the method used to calculate flowrate, but rather is Mr. Mix's state of mind at the time of the deletions from his iPhone, the method of calculating flow rate is not relevant in this case.  Therefore, expert testimony by Mr. Payne regarding  subject matters set out in Topic 5 will not be permitted.

       E.  Topic 6

With respect to Topic 6, i.e.,the "[c]omparison between the allegedly corruptly deleted text messages and the documents preserved by Kurt Mix and produced to the BP Legal Team," defendant has indicated that he anticipates that "Mr. Payne will, in addition

9

to providing any necessary and appropriate interpretation of complex engineering terms contained is this cohort of text messages, compare the contents of these text messages to documents that Mix preserved and provided to the BP Legal Team." Doc. 384-2, p. 28. The Court has previously held that testimony by Mr. Payne regarding the meaning of engineering jargon and acronyms qualifies as "background information." Doc. 205, p. 8-9. Mr. Payne will be permitted to provide such testimony. However, the additional disclosures provided by defendant to the United States regarding Topic 6 do not set forth any expert opinions that would "assist the trier of fact to understand the evidence or to determine a fact in issue." In fact, they set forth no expert opinions at all. Moreover, the additional disclosures fail to identify the specific documents which defendant seeks to have Mr. Payne compare to the text messages. Defendant identifies the documents to be compared stating:

> These documents will include: Mix's flow rate modeling showing the possibility that flow rate could exceed 15,000 bopd or greater; graphs and charts depicting modeling for Top Kill showing that it could fail if the flow exceeded 15,000 bopd; documentation of the amount of mud pumped on the first day of Top Kill; documentation of the efforts to pump bridging pills into the well on the first day of Top Kill; documentation regarding Top Kill's lack of success and the reasons therefore; and any preserved text messages referencing Top Kill. The documents supporting this anticipated testimony by Terry Payne are included within **Exhibits 2-7 (*in globo*)** and should be easily identifiable to the Government.

Doc. 384-2, p. 28. Because defendant has not disclosed any opinions to be offered by Mr. Payne with respect to Topic 6, he will not be permitted to offer any expert opinions on this subject matter. Therefore, Mr. Payne's testimony regarding Topic 6 will be limited to

explanations of the complex engineering terms, jargon, and acronyms contained in those materials.

F. Challenge to Terry Payne's Qualifications as an Expert

The United States also contends that Terry Payne's testimony should be excluded as he is not qualified to testify as an expert with regard to deep water well operations and well kill procedures. In its prior Order and Opinion addressing the United States' motion to exclude the expert testimony of Terry Payne, the Court stated that it would defer the determination of whether Mr. Payne qualified as an expert witness until "he has undergone *voir dire* at trial concerning his qualifications" but noted that it appeared that Mr. Payne's qualifications were sufficient for him to be recognized as an expert witness. Doc. 260. In considering this motion the Court has again reviewed Mr. Payne's qualifications and finds him qualified to testify as an expert witness consistent with the rulings included in this Order and Opinion and in the Order and Opinion filed on April 12, 2013. Mr. Payne is a licensed petroleum engineer with professional experience in the areas of reservoir simulation studies and recovery predictions, production engineering, reservoir engineering, reserve calculations, well analysis, production optimization and reservoir management. Mr. Payne's educational background and work experience qualify him as an expert for the purposes for which the Court is permitting him to testify. Accordingly, the United States' "Renewed Motion to Preclude Proposed Expert Testimony" is granted in part and denied

in part.

    New Orleans, Louisiana, this 5th day of August, 2013.

                                    STANWOOD R. DUVAL, JR.
                                  UNITED STATES DISTRICT JUDGE