**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                                    **CRIMINAL ACTION**

**VERSUS**                                                                            **NO. 12-171**

**KURT E. MIX**                                                                 **SECTION "K"(1)**

<u>**ORDER AND REASONS**</u>

Before the Court are three motions:

1)      Defendant's Motion to Dismiss the Pending Indictments for Facial Insufficiency
         (Doc.  449);

2)      Defendant's Motion to Dismiss Count Two of the Pending Indictments as Legally
         Insufficient (Doc.  450); and

3)      Defendant's Motion to Dismiss the Pending Indictments Due to Constitutional
         Defects in the Grand Jury Proceedings (Doc.  456).

The Court will take these motions up seriatim; however, the Court will provide a brief overview

of its relevant previous rulings.

**I.  BACKGROUND**

         The facts and circumstances of this case have been set forth in detail before and will not

be repeated here.  The most salient rulings with regard to the above-listed motions are: (1) the

oral ruling on Defendant's Motion to Dismiss Count Two of the Indictment rendered on

November 8, 2012 (Doc.  No.  512)  and the Court's Order and Opinion with respect to

defendant's "Motion *in Limine* to Preclude References to Unrecovered Voicemails, and for an

order Compelling Disclosure of Grand Jury Transcripts." (Doc.  No.  470).   The Court

incorporates by reference the analyses found in these two rulings; however, it will highlight what

it deems relevant in the context of the motions before it now.

**A.      Relevant Rulings with Respect to November 8, 2012 Denial of Motion to Dismiss Count Two of Original Indictment**

The initial indictment in this matter  was handed down by a grand jury on May 2, 2012, charging Kurt Mix ("Mix") with two counts of obstruction of justice for violating 18 U.S.C. § 1512(c)(1) which provides in pertinent part that:

> Whoever corruptly–
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding . . . shall be fined under this title or imprisoned for not more than 20 years or both.

18 U.S.C. § 1512(c)(1).   In the initial indictment, Count One was based on Mix's alleged October 4, 2010 deletion from his iPhone of all texts in a string of texts with BP's then-Drilling Engineering Manager for the Gulf of Mexico ("Supervisor").  Count 2 was based on Mix's alleged August 19, 2011 deletion from his iPhone of all texts in a string of texts with an outside contractor ("Contractor").

With respect to the initial indictment, Mix filed the aforementioned Motion to Dismiss Count Two of the Indictment.  (Doc.  96).  Defendant contended, *inter alia*[1], that the

---

[1]Specifically, Mix urged in that motion that:
1)      None of the deleted messages had any plausible bearing on whether the Deep Water Horizon incident was a result of criminal activity or whether BP intentionally under-stated the amount of oil flowing from the Macondo well;
2)      The Government refused to explain how deleting the messages could possibly have disturbed pending or contemplated judicial proceedings;
3)      As noted above, the Government's view, i.e., that Mix can be convicted of obstruction of justice even where the allegedly withheld material has no possible consequence to the asserted grand jury proceeding, is wrong.  Relying on *United States v. Aguilar*,  515 U.S. 593, 599 (1995) defendant contended that to establish the requisite "nexus" for a conviction for obstruction of justice, the government must     prove that the "natural and probable effect" of the defendant's alleged acts was interference with the "due determination of justice[]"; and
4)      The essential "nexus" required has an objective component; therefore, even if a defendant acts with an "evil purpose" to obstruct justice, he does not violate the statute if he "use[s] means that would 'only unnaturally and improbably be successful'" in interfering with a

2

Government's position that the defendant could be convicted of obstruction even where the allegedly withheld material had no possible consequence to the asserted grand jury was wrong. Defendant argued that to establish the requisite nexus for a conviction of obstruction of justice, the government must prove that the natural and probable effect of the defendant's alleged act was interference with the "due determination of justice."  (Doc.  512, Transcript at 120.)

In its oral reasons for denying the motion, the Court first noted  that materiality is not an element of the crime of obstruction of justice pursuant to 18 U.S.C. § 1512(c)(1).  *Id.*  at 121. The Court also held that the nexus required to be proven for obstruction "requires only that the deletion bears some relation in time, causation or logic to the judicial proceeding."  *Id.* at 121.

In reaching that determination, this Court commented on *United States v. Aguilar*, 115 S.Ct. 2357, 2361 (1995), and stated:

> the Supreme Court examined the scope of the intent requirement  under the Omnibus Clause of  18 U.S.C. §1503 which, prohibits "corruptly . . . influenc[ing], obstruct[ing], or  imped[ing] or endeavor[ing] to influence, obstruct, or impede,  the due administration of justice."   The Supreme Court approved a "nexus" requirement previously adopted by a number of Courts of Appeals.  *Id.* at 2362.  In surveying prior decisions of the Courts of Appeals, the Supreme Court noted that:
>> Some courts have phrased the showing as a "nexus" requirement–that the act must have a relationship in time, causation, or logic with the judicial proceedings.  In other words, the endeavor must have the "natural and probable effect" of interfering with the due administration of justice.  But . . . if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding he lacks the requisite intent to obstruct.

*Id.* (internal quotations and citations omitted).  (Doc.  512, Transcript at 122-23).

---

judicial proceeding.

3

This Court then commented on *Arthur Andersen, LLP v. United States*, 125 S.Ct. 2129, 2136 (2005), noting that the Supreme Court held that the nexus requirement of a relationship in time, causation, or logic with the judicial proceedings also applies in cases involving alleged violations of 18 U.S.C. §1512 which statute is at issue here.  "The government must [] prove beyond a reasonable doubt some "nexus" between the obstruction and the official proceeding." *United States v. Bennett*, 664 F.3d 997, 1013 (5th Cir. 2011) (examining 18 U.S.C. §1512(c)(2), *rev'd on other grounds* 133 S.Ct.  71 (2012).  (Doc.  512, Transcript at 123).  As stated in *United States v.  Matthews*, 505 F.3d 698 (7th Cir.  2007):

> before a defendant may be convicted of obstruction under § 1512(c)(1), he must believe that his acts will be likely to affect a pending or foreseeable proceeding. *See Arthur Andersen,* 544 U.S. at 707, 125 S.  Ct.  2129; *United States v.  Kaplan*, 490 F.3d 110, 125 (2d Cir.  2007) ("[A] 'knowingly . . . corrupt persuader' must believe that his actions are likely to affect a particular, exiting or foreseeable official proceeding.")

*Mathews,* 505 F.3d at  708.

Thus, this Court held that an essential element  of the "nexus" analysis is the defendant's intent.  "Determining a criminal defendant's intent is a question of fact that the jury must resolve under the totality of the circumstances and after evaluating all of the evidence."  *United States v. Merkt*, 764 F.2d 266, 272 (5th Cir. 1985).  See also *United States v. Jones*, 217 Fed. Appx. 333 (5th Cir. 2007 ("Intent is a fact question for the jury and is often inferred from circumstantial evidence.").

In denying Mix's first Motion to Dismiss, the Court determined that given the lack of a materiality element, the test is not whether the deletion of the email actually had an effect on the proceedings of the grand jury, but rather whether Mix thought that deleting the information

could have an effect upon the grand jury proceedings.  The Court noted that at the time Mix deleted the email string he knew the following:

- There had been a public announcement that the government was investigating the Macondo well incident;

- Mix had received a corporate hold notice with respect to documents (including texts) related to the Macondo well incident;

- A BP vendor had collected hard copy documents from him related to the Macondo well incident; and

- A BP vendor had schedule another meeting to collect additional data from Mix.

Thus, considering the totality of these circumstances, this Court found that a jury could infer that Mix deleted the text message string to and from Contractor with the intent to deprive a judicial proceeding of the messages and he could have know that it was foreseeable that by doing so he would "impair the object's . . . availability for use in an official proceeding."  18 U.S.C. §1512(c)(1).  The Court reiterated,  "[t]he statute does not require an actual adverse effect on a grand jury proceeding only that the act "have a relationship in time, causation or logic with the judicial proceeding" and that the act have the "natural and probable effect" of interfering with the due administration of justice."  (Doc.  512, Transcript at 124).

**B.**   **Relevant Rulings in Order and Opinion (Doc. 470) Concerning Defendant's "Motion *in Limine* to Preclude References to Unrecovered Voicemails, and for an order Compelling Disclosure of Grand Jury Transcripts."**

A Superseding Indictment (Rec. Doc. 215) was handed down on March 20, 2013; it broadened the scope of the obstruction indictment against Mix by referencing in Count 2 hundreds of voicemails received over a period of time all of which had been allegedly deleted from defendant's iPhone on or about August 20, 2011. In response, defendant filed a "Motion *in Limine* to Preclude References to Unrecovered Voicemails, and for an order Compelling Disclosure of Grand Jury Transcripts."

In its June 6, 2013, ruling, this Court found that only four deleted, unrecovered voicemails were relevant. They included the Contractor voicemails of June 17, 2011 and August 18, 2011 which had been deleted between April 13, 2011 and August 22, 2011. The Court also found that a voicemail left by the Supervisor on August 20, 2911 and deleted the same day was likewise relevant. Finally a voicemail that came from a telephone call that went through the BP's general switchboard was relevant. Because of the timing of the deletions and the surrounding facts, when considered together, the Court found these allegations to be sufficient to give rise to a reasonable inference that would have a tendency to make a fact more or less probable than it would be without the evidence, e.g., whether a nexus exists between the deletion of the voicemails and a foreseeable grand jury proceeding or whether Mr. Mix acted with corrupt intent in deleting the voicemails. (Doc. 470 at 5-6 of 13).

In addition, defendant sought to compel the United States to disclose the transcripts of the grand jury proceedings based on Mix's contention that "it is difficult to see how a grand jury that was appropriately apprised of the evidence and correctly instructed as to the elements of

obstruction of justice could have found probable cause to believe that Kurt Mix deleted any voicemails from his iPhone with the 'corrupt' intent to obstruct a federal criminal investigation into the Macondo well incident."  Doc. 258, p. 11.  Thus, defendant was concerned that the prosecutors had improperly instructed the grand jury and that if so, in his estimation dismissal of the indictments would be warranted.

Having reviewed portions of the March 20, 2013 grand jury proceedings and the December 2012 proceedings, the Court found that:

1)      on May 2, 2012, prior to the return of the original indictment, the prosecutor correctly stated the elements of the offense of obstruction of justice as charged in the original indictment.

2)      on March 20, 2013, the prosecutor failed to inform the grand jury "that defendant had to act "corruptly" in actually or attempting to alter, destroy, mutilate, or conceal a record, document or other object with the intent to impair the object's integrity or availability for use in an official proceeding.  Also the prosecutor did not mention that the defendant must have acted dishonestly.

(Doc.  470 at 7-9 of 13).

The Court then examined the law as to whether these defalcations were sufficient to mandate the dismissal as sought.  The Court stated:

"An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits.  *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 409 (1956).  Federal law does not obligate the prosecutor to provide legal instruction to the jury.  *United States v. Lopez-Lopez*, 282 F.3d 1, 9 (9th Cir. 2002).  "Courts . . . generally have found that the prosecutor satisfactorily explains the offense to be charged by simply reading the statute to the grand jury." *Id.* (internal quotation and citation omitted).  The prosecutor is under no

obligation to give the grand jury legal instructions."  *Id.* (internal quotation and citation omitted).   In dicta the Sixth Circuit has noted that "even if an incorrect jury instruction was given to the grand jury . . . the indictment was valid on its fact and was sufficient to require a trial of the indictment on its merits."  *United States v. Battista*, 646 F.2d 237, 242 (6th Cir. 1981), citing *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Slepicoff*, 524 F.2d 1244 (5th Cir. 1975).

However, there are circumstances under which errors in the grand jury may result in dismissal of an indictment. As a general matter "a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255, 108 S.Ct. 2369, 2373 (1988).  In examining  the applicable standard of prejudice in analyzing attempts to dismiss an indictment for errors before the grand jury, the Supreme Court concluded that "at least where dismissal is sought for nonconstitutional error," dismissal is appropriate "only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.*  at 256, 108 S.Ct. at 2374, quoting *United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct. 938, 945-946, 89 L.Ed.2d 50 (1986).

(Rec.  Doc.  470 at 9-10 of 13).

The Court then analyzed a number of cases to determine what constitutes sufficient "prejudice" to require the dismissal of these indictments and found that the prosecutor's error in the return of the Mix superseding indictment was insufficient considering that it was (1) a single error, (2) the grand jury had been properly instructed with respect to the original indictment, (3) the prosecutor had given the grand jury the proposed superseding indictment which included the "corruptly" element to the grand jury, (4) the original indictment which included the "corruptly" language was displayed to the grand jury on a screen.  Based on these factors, the Court found that it was reasonable to conclude that the grand jury was aware of the "corruptly" element in spite of the prosecutor's March 20, 2013 failure.  The Court also noted that no grand juror asked any questions concerning the intent requirement further supporting the Court's conclusion that

8

there was no prejudice to Mix.  As such, the Court found that the dismissal of the Superseding

Indictment was not warranted.  (Rec.  Doc.  470, at 12-13 of 13).


**C.**     **Second Superseding Indictment**

On June 19, 2013, the grand jury handed down a Second Superseding Indictment for

Obstruction of Justice.  (Rec. Doc.  424).  In its latest iteration, the Government charges against

Mix were honed and clearly allege the following facts:

1)      that from **April of 2010 through August 2011**, Mix used an iPhone to exchange

electronic text message and voicemails with then-Drilling Engineering Manager

for the Gulf of Mexico ("Supervisor") and an outside contractor working on the

spill response ("Contractor") (Rec.  Doc.  424, ¶ 4);

2)      that from **April of 2010 through July of 2011**, ten Legal Hold Notices were

issued by BP to Mix to preserve all records concerning the Macondo well incident

(Rec.  Doc.  424, ¶¶ 5-6);

3)      that on **June 1, 2010,** the Department of Justice publically announced civil and

criminal investigations concerning the Macondo incident (Rec.  Doc.  424, ¶ 7);

4)      that on **September 22, 2010**, a vendor contacted Mix by e-mail and was informed

that he would be collecting documents and would like to schedule a time to

collect "all active electronic data" ((Rec.  Doc.  424, ¶ 9);

5)      that on **September 27, 2010**, Mix met with the vendor at which time Mix

acknowledged that he had reviewed the Legal Hold Orders which required him to

preserve all Macondo-related documents (Rec.  Doc.  424, ¶ 10);

6)      that on **October 4, 2010**, Mix deleted all iPhone texts with Supervisor (Rec. Doc. 424, ¶ 11);

7)      that on **June 23, 2011,** the SEC in conjunction with the Department of Justice issued a subpoena to BP specifically requesting "all communications to or from Kurt Mix between **April 20, 2010 and May 31, 2010** (Rec. Doc. 424, ¶ 13);

8)      that on **June 28, 2011**, BP in-house attorney informed Mix of specific request (Rec. Doc. 424, ¶ 14);

9)      that a meeting for collection with the vendor was set for **August 22, 2011** (Rec. Doc. 424, ¶ 15);

10)     that on **August 20, 2011**, Mix deleted from his iPhone all texts with Contractor as well as one voicemail from Supervisor, one voicemail from Contractor and one voicemail from a telephone call that went through BP's general switchboard. (Rec. Doc. 424, ¶ 16)

11)     that on **August 22, 2011**, Mix turned over his iPhone to be imaged and admitted to attorneys for BP he had deleted from his iPhone some text messages and voicemails, including text messages related to the Macondo well. (Rec. Doc. 424, ¶ 17).

Count One charges a violation of 18 U.S.C. § 1512(c)(1) as to the text messages with Supervisor deleted on October 4, 2010 and Count Two charges a violation of 18 U.S.C. § 1512(c)(1) as to the August 20, 2011 deletions of text message with Contractor and voicemails

from Supervisor and Contractor.  With this as background then, the Court turns to defendant's

the Defendant's Motion to Dismiss the Pending Indictments for Facial Insufficiency.[2]


## II.  DEFENDANT'S MOTION TO DISMISS THE PENDING INDICTMENTS FOR FACIAL INSUFFICIENCY BECAUSE OF FAILURE TO ALLEGE NEXUS (DOC.  449)

Defendant Mix contends that all three of the indictments are **facially insufficient** because

they do not allege, either *in haec verba* or by words of similar import, that Mix's alleged deletion

of the SUPERVISOR and CONTRACTOR text message strings and the deletion of three voice

mails had a "nexus to any official proceeding."  (Doc.  449-1 at 5 of 14).  Defendant maintains

that this failure is not harmless or curable, and that the indictments as such fail as jurisdictionally

defective citing *United States v. Meacham*, 626 F.2d 503, 507 (5th Cir.  1980).  As further

support, defendant Mix relies on the evidence presented to the grand jury based on grand jury

transcripts with respect to each of the indictments: the original indictment, the first superseding

indictment and the second superseding indictment.


## ANALYSIS:  OBSTRUCTION PURSUANT TO 18 U.S.C. § 1512(c)(1) AND ALLEGATIONS OF NEXUS *IN HAEC VERBA* ARE NOT NECESSARY

The United States Court of Appeals for the Fifth Circuit has stated that:

"before a defendant may be convicted of obstruction under § 1512(c)(1), he must believe that his acts will be likely to affect a pending or foreseeable proceeding."

---

[2] The Court orders that the transcript of the grand jury testimony of June 19, 2013 Commencing at 9:07 a.m. which was provided to the Court under seal and has been previously docketed as Document No.  456-6 be filed, under seal, as Exhibit "A" to this Order and Reasons.

> *See ArthurAndersen*, 544 U.S. at 707, 125 S. Ct. 2129; *United States v. Kaplan,*
> 490 F.3d 110, 125 (2d Cir. 2007) ("[A] 'knowingly . . . corrupt persuader' must
> believe that his actions are likely to affect a particular, existing or foreseeable
> official proceeding.")

*United States v. Matthews*, 505 F.3d 698, 708 (5th Cir. 2007). Furthermore, an indictment is sufficient, "if it contains the elements of the offense charged, fairly informs the defendant what charge he must be prepared to meet, and enables the accused to plead acquittal or conviction in bar of future prosecutions." *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986) (citations omitted). The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards. *Id.* citing *United States v. Webb*, 747 F.2d at 284. "Those minimal constitutional standards therefore do " 'not compel a ritual of words.' The validity of an indictment is governed by practical, not technical considerations." *United States v. Ramos*, 537 F.3d439 (5th Cir. 2008) citing *United States v. Crow*, 164 F.3d 229, 235 (5th Cir. 1999).

In the instant motion, defendant asks the Court to use the analysis and application found in *Walker v. United States*, 342 F.3d 22, 25 (5th Cir. 1965) which was decided nearly fifty years ago and which was recently relied upon in *United States v. Rainey*, 2013 WL 2181285 (E.D. La. May 2, 2013) to find all three indictments facially insufficient. In *Rainey,* the court applied the *Walker* analysis to dismiss certain charges lodged by the United States against another BP employee swept up in the Macondo debacle based on the court's finding that that indictment did not set forth on its face all of the essential elements of the crime. This Court finds the analysis unavailing to the Mix matter.

In *Walker*, a defendant had gone to trial on a multi-count indictment, had been found guilty on a number of counts, and had appealed claiming "plain error" under Fed. R. Crim. P.

52(b).  The issue before that court was whether a count charging the crime of uttering a forged

writing met the requirement that an indictment must set forth the elements of the offense sought

to be charged, or else a conviction based thereon cannot stand.  *Id.*  at 26 citing *White v. United

States*, 67 F.2d 71 (10th Cir.  1933).

   The *Walker* trial judge charged the jury by reviewing each and every count at issue in the

indictment and then read to the jury the applicable statutes in full.   No further definition of the

offenses set forth in the indictment was requested.  *Walker*, 342 F3d.  at 24.  With respect to the

crime of uttering a forged writing,  which crime was charged in four separate counts of the

indictment and all of which contained the same formal language, Count Two read:

> that on or about July 3, 1962 [the defendant], aided and abetted by others, "did
> unlawfully, wilfully and knowingly, with intent to defraud, utter and publish to
> Fulton County Buehler Markets, Inc., 247 Forrest Avenue, N.E., No.  8, Atlanta,
> Georgia, as true the falsely forged name of the true payee, to wit, Frank H.
> Thorpe, on the back of the United States Treasury Check described in Count One
> of this indictment, well knowing said endorsement to be forged, in violation of
> Section 495, title 18 U.S.C.A."

*Id.*

   The court noted that an essential element of the crime of uttering a forged writing was an

intent to defraud **the United States**.  It then reasoned that there was no allegation that the acts

done were with an "intent to defraud the United States.  For this proposition, it relied on the

syntax of the indictment itself.  "While it may be said that to defraud the United States is

implied, the essential elements of a crime cannot be implied in an indictment.  Actually, a more

reasonable construction of the language used [in the *Walker* indictment] is that the intent to

defraud was directed toward **the business firm** at which the check was cashed."  *Id.*  at 26-27

(emphasis added).  The *Walker* court continued commenting on *White v.  Levine* 40 F.2d 502,

503 (10th Cir. 1930) where a court found an indictment which read "with intent to defraud American Trust Company, St. Louis, Missouri" charged no offense because there was no averment of the essential intent to defraud the United States.

In the *Rainey* case, Judge Engelhardt analyzed Count One of the relevant indictment in which the crime of obstruction of proceedings before departments, agencies and committees pursuant to 18 U.S.C. § 1505 was sought to be charged. The court noted that there are three elements that the indictment must allege: (1) that an "inquiry or investigation [was] being had by either House, or any committee of either House or any joint committee of the Congress," (2) that the defendant knew of such pending inquiry or investigation, and (3) that the defendant corruptly endeavored to obstruct "the due and proper exercise of the power of inquiry" under which such inquiry or investigation was being had. *Rainey*, 2013 WL 2181285, * 14. The court then reviewed the factual allegations which the Government maintained provided the factual underpinnings to meet this standard, and found the allegations to be lacking in sufficient specificity to trigger an adequate charge because "the indictment alleges no facts that would **permit a reasonable inference** that Rainey knew that an inquiry was being conducted **by the Subcommittee on Energy and Environment** and that [the two alleged criminal acts] were connected to any such inquiry." The court's reasoning was based on an extensive analysis of the factual allegations of two paragraphs of the indictment and the fact that in the descriptions make no specific link of the "response[s] to a **Congressional request for briefing of members and staff** of Congress" to an "inquiry" being had by either House, or any committee of either House or any joint committee of the Congress, as defined in the statute. Thus, *Rainey* does not stand for the proposition that allegations must be made *in haec verba* or by words of similar import.

14

Rather, there was a determination by the Court that, like that the facts alleged as to the source of the inquiry did not come within the statute itself. Had the factual allegations made clear the necessary linkage, the *Rainey* indictment would have withstood that challenge.

This Court finds no such infirmity in the Mix indictments. Clearly, the allegations as outlined above charge facts from which a jury could infer that there was ample information available to Mix for him to know or believe that his acts of deleting texts and voicemails would be likely to affect a pending or foreseeable proceeding. *See Arthur Andersen,* 544 U.S. at 707, 125 S. Ct. 2129; *United States v. Kaplan*, 490 F.3d 110, 125 (2d Cir. 2007). *Rainey* and *Walker* do not stand for the proposition that elements of an indictment must be stated in some proscribed, unalterable method. Facts from which a jury could reasonably infer the necessary nexus in this instance are replete.

As outlined in the Second Superseding Indictment, Mix used an iPhone to text and received voicemails during the time that he was working on Macondo spill. He had received 10 Legal Hold Notices which advised him that deleting data could subject him to penalties. On June 1, 2010, the Department of Justice publically announced civil and criminal investigations concerning the Macondo incident. Even after a vendor informed him that the vendor wanted to schedule a time to collect "all active electronic data" and Mix acknowledged that he had reviewed the Legal Hold Orders which required him to preserve all Macondo-related documents, the indictment alleges that October 4, 2010, Mix deleted all iPhone texts with Supervisor. In addition, on June 23, 2011, the SEC in conjunction with the Department of Justice issued a subpoena to BP specifically requesting "all communications to or from Kurt Mix between April 20, 2010 and May 31, 2010, and on June 28, 2011, BP in-house attorney informed Mix of

specific request.  Even though a meeting  with the vendor for collection of these materials was

set for August 22, 2011, Mix allegedly deleted from his iPhone all texts with Contractor as well

as one voicemail from Supervisor, one voicemail from Contractor and one voicemail from a

telephone call that went through BP's general switchboard on August 20, 2011.  Indeed, when on

August 22, 2011 Mix turned over his iPhone to be imaged, he admitted to attorneys for BP he

had deleted from his iPhone some text messages and voicemails, including text messages related

to the Macondo well.

Through these three indictments, Mr.  Mix has been amply informed as to the elements of

the offense charged, has been fairly informed of the charges he must be prepared to meet, and is

clearly enabled to plead acquittal or conviction in bar of future prosecutions.  Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss the Pending Indictments for

Facial Insufficiency (Doc.  449) is **DENIED**.


## III.   DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE PENDING INDICTMENTS AS LEGALLY INSUFFICIENT (DOC.  450)

Mix moves the Court to dismiss Count Two of the pending indictments as legally

insufficient.  Seizing on the Court's previous ruling as to the original indictment outlined, *supra*,

and armed with materials that have been provided through *Brady* discovery, Mix now urges the

Court to dismiss Count Two "for want of sufficient evidence."  Mix argues that it is now clear

that the Government has no plausible evidentiary basis for its assertion of a nexus that is required

for a conviction under the charging statute.  (Doc.  450, Motion to Dismiss at 6 of 16).  Mix then

presents a plethora of exhibits, synopses of testimony of Contractor, and arguments based on the

Government's exhibit and witness lists to contend that the Government obtained information that

squarely contradicts any plausible claim of "nexus" on Count Two.  As such, Mix contends that

on the "undisputed facts" presented, and drawing all reasonable inferences in the Government's

favor, no reasonable jury could find that Mix's deletion of text messages and voicemails at issue

in Count Two had the natural and probable effect of interfering with the due administration of

justice.

### ANALYSIS:  THE COURT WILL NOT MAKE FINDINGS OF FACT IN THE CONTEXT OF A RULE 12 MOTION

"The propriety of granting a motion to dismiss an indictment under F.R.Crim.P. Rule12

by pre-trial motion is by-and-large-contingent upon whether the infirmity in the prosecution is

essentially one of law or involves determinations of fact."  *United States v. Korn,* 557 F.2d 1089,

1090 (5th Cir. 1977) (internal quotations and citation omitted).  See also *United States v. Flores*,

404 F.3d 320, 324 (5th Cir. 2005).  "'If a question of law is involved, then consideration of the

motion is generally proper.'"  *United States v. Flores*, 404 F.3d at 324, quoting *United States v.*

*Korn*, 557 F.2d at 1090.  Thus only if a court need not invade the province of the ultimate finder

of fact, that is the jury, can a district court make preliminary findings of fact necessary to decide

the questions of law presented by pretrial motions.  *Id*.  at 324 n.6.  Moreover, under the tenets of

*United States v. Calandra,* 414 U.S. 338 (1974) (sufficiency of evidence without prosecutorial

misconduct not grounds for dismissal); *Costello v.  United States*, 350 U.S. 359 (1956) (use

hearsay evidence not grounds for dismissal), and *United States v.  Williams*, 504 U.S. 36 (1992)

(failure to disclose exculpatory materials to grand jury not grounds for dismissal), discussed

*infra,* Mix's argument is meritless.

17

A primary legal basis presented by Mix with respect to this motion is the *Rainey* decision.  In that case, as previously noted, the court dismissed a count of an indictment based on the fact that the allegedly false letter to Congressman Edward Markey was a response to an inquiry from a congressional **subcommittee** which the court found as a matter of law did not come under the penumbra of 18 U.S.C. § 1505 since the statute required the subject inquiry or investigation to be by "either House, or any committee of either House or any joint committee of the Congress." 18 U.S.C. § 1505.   The court found that a subcommittee did not come within that rubric and dismissed that count on that legal basis.   This analysis is inapposite where as here the intent of Mix has been placed at issue by virtue of the facts alleged.

This Court made clear in its previous ruling that it considers an essential element of the nexus analysis is the defendant's intent.  The Court has outlined, *supra,* the factual allegations from which a reasonable jury could find that  Mix's deletion of text messages and voicemails  at issue had the natural and probable effect of interfering with the due administration of justice. Indeed, a jury might find that the deletion of harmless electronic data might have been done to hide the deletion of one extremely incriminating one.  The inquiry that Mix invites this Court to undertake is clearly one that requires an analysis of motive and intent and a review of testimony and exhibits that require it to invade the province of the jury.  As such, the Court finds no merit in this motion.  Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss Count Two of the Pending Indictments as Legally Insufficient (Doc.  450) is **DENIED**.

**IV.    DEFENDANT'S MOTION TO DISMISS THE PENDING INDICTMENTS DUE
TO CONSTITUTIONAL DEFECTS IN THE GRAND JURY PROCEEDINGS
(DOC.  456)**

In the third motion presented, Mix seeks the dismissal of the pending indictments due to

the following alleged defects in the grand jury proceedings:

1)      the failure of the prosecutor to present the grand jury with any evidence regarding
the content of the text messages at issue, instead relying on the issuance by BP of
"legal hold notices" and Mix's deletions after receiving same fail to satisfy the
requirements fo the Fifth Amendment's Grand Jury clause;

2)      errors in the prosecutor's legal instructions substantially interfered with the grand
jury's ability to perform its constitutional function with errors including:

    a) improper instruction of the "corrupt intent" element;
    b) improper instruction concerning "official proceeding" element;
    c) failure to instruct the grand jury with regard to nexus; and
    d) improper instruction of "probable cause."

Mix maintains that "[t]hese defects are so fundamental and so strike at the heart of the structural

protections afforded by the Fifth Amendment's Grand Jury Clause, that the indictments against

Mix must be dismissed as constitutionally invalid.  *See United States v.  McKenzie*, 678 F.2d

629, 631-32 (5th Cir.  1982)."  (Doc.  456-1 at 6 of 40)

Mix bases this motion on a review of grand jury transcripts and the alleged perfunctory

nature of evidence provided by single witnesses with respect to the original, first superseding

and second superseding indictments respectively.    As such, he argues that the grand jury failed

to function as an independent body.  Moreover, he maintains that the outlined additional  flaws

in the grand jury instructions exacerbated the evidentiary failures relieving the Government of

the burden to show that (1) Mix acted with the "specific intent to subvert or undermine the due

administration of justice," and that (2)  Mix's conduct bore a "nexus" to a "foreseen" official

proceeding.   He maintains that the legal instructions were so flawed by the time of the Second

19

Superseding Indictment that it was presumptively tainted and incapable of being cured. *United States v. Stevens*, 771 F. Supp. 2d 556, 568 (D. Md. 2011).

The Court will first address the argument that because the prosecutor failed to provide evidence concerning the content of the text messages, this Court should find that the Fifth Amendment's Grand Jury Clause has been violated.

## ANALYSIS

### A. Alleged Evidentiary Infirmities Warranting Dismissal of Indictment Under The Fifth Amendment Grand Jury Clause

There are a number of cases which demonstrate that Mix's contention in this regard is without merit.

### 1. *McKenzie:* Actual Prejudice Caused by Prosecutorial Misconduct

In discussing the proper function of a grand jury, in the above-cited *McKenzie,* the Fifth Circuit stated:

> The fifth amendment states that no person shall be held to answer for a capital or otherwise infamous crime "unless on a presentment or indictment of a grand jury." "This constitutional guarantee presupposes an investigative body 'acting independently of either prosecuting attorney or judge,' *Stirone v. United States,* 361 U.S. 212, 218 (80 S.Ct. 270, 273, 4 L.Ed.2d 252) (1960), whose mission is to clear the innocent, no less than bring to trial those who may be guilty." *United States v. Dionisio*, 410 U.S. 1, 16-17, 93 S. Ct. at 773. The grand jury has historically served as a "protective bulwark standing solidly between the ordinary citizen and the overzealous prosecutor." *Id.* at 17, 93 S.Ct. at 773.

*McKenzie,* 678 F.2d at 631-32.

In overturning a district court's ruling, the *McKenzie* appellate court noted that "the district court dismissed an indictment on two grounds: (1) the defendant's constitutional right not

to be brought to trial except after a valid indictment and (2) the district court's supervisory power

to protect the integrity of the grand jury process."  *Id.* at 631.  In exercising it supervisory

powers, the district court found that the existence of actual prejudice was unnecessary.

     The Fifth Circuit found this approach incorrect and stated:

> This conclusion contradicts the rule of this circuit, which states that even in the case of the most "egregious prosecutorial misconduct," the indictment may be dismissed only "upon a showing of actual prejudice to the accused."  *United State v.  Merlino*, 595 F.2d 1016, 1018 (5th Cir.  1979), *cert.  denied*, 444 U.S. 1071, 100 S.Ct.1014, 62 L.Ed.2d 752 (1980).  Thus whether the court is acting under its supervisory authority or its duty to protect the constitutional rights of defendants, an indictment may be dismissed only where the defendants' case has been unfairly prejudiced.  In an attempt to define prejudice in this situation, we have stated that "(i)nflammatory remarks made by a prosecutor justify the dismissal of an indictment if the improper remarks so bias the grand jurors that their votes were based on their bias."  *United States v.  Cathey*, 591 F.2d 268, 273-74 (5th Cir.  1979).  **In other words, we will dismiss an indictment only when prosecutorial misconduct amounts to overbearing the will of the grand jury so that the indictment is in effect, that of the prosecutor rather than the grand jury."**

*Id.* (emphasis added).

### 2. *Costello* and Hearsay Evidence Not Grounds for Dismissal

     The United States Supreme Court has likewise made clear that defendants cannot

challenge indictments on the ground that they are not supported by adequate or competent

evidence.  *Costello v.  United States*, 350 U.S. 359, 408-09 (1956).  Rejecting an invitation to set

aside an indictment because it was based solely on hearsay evidence, the Supreme Court stated:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed.  The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competence and adequacy of the evidence before the grand jury.  This is not required by the Fifth Amendment.  **An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the**

> **prosecutor, if valid on its face is enough to call for trial of the charge on the merits.**  The Fifth Amendment requires nothing more.

*Id.*  (emphasis added)*; United States v.  Aldridge*, 2011 WL 1811074, *5-6 (S.D.Tex.  May 10,2011).

In *Bank of Nova Scotia v.  United States*, 487 U.S. 250 (1988), the Supreme Court reaffirmed this principle.  There, the defendant contended that IRS agents gave misleading and inaccurate summaries to a grand jury just prior to the indictment.  There being no evidence of prosecutorial misconduct, the Court found that this infirmity likewise "boiled down" to the reliability or competence of the evidence presented to the grand jury.  Citing *United States v. Calandra*, 414 U.S. 338, 344-45 (1974), it again noted that an indictment valid on its face is not subject to such a challenge and found that a district court may not dismiss an indictment without a showing of prosecutorial misconduct.

Indeed, in *Calandra*, the Supreme Court found that a witness summoned to appear and testify before the grand jury may not refuse to answer questions on the ground that the questions are based on evidence obtained from an unlawful search and seizure.  In its analysis, the Court stated:

> The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered.  Thus an indictment valid on its face is not subject to challenge of the ground that the grand jury acted on the basis of inadequate or incompetent evidence, *Costello v. United States, supra; Holt v. United States*, 218 U.S. 245, 31 S.Ct.  2, 54 L.Ed.  1021 (1910); or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination.  *Lawn v.  United States*, 355 U.S. 339, 78 S.  Ct.  311, 2 L.Ed.2d 321 (1958).

*Id.*  at 345, 97 S.  Ct.  618.  Thus, clearly, attacks based on the sufficiency of evidence without proof of prosecutorial misconduct are meritless.

22

### 3.   *Williams* **and Failure to Disclose Exculpatory Materials is Not Grounds for Dismissal**

Likewise, in *United States v. Williams*, 504 U.S. 36 (1992), the Supreme Court squarely rejected the notion that the government had a duty to disclose substantial exculpatory evidence that it had in its possession to a grand jury.  In that instance, Williams had been indicted by a federal grand jury on seven counts of knowingly making a false statement or report for the purpose of influencing the action of a federally insured financial institution in violation of 18 U.S.C. § 1014.  The misrepresentations were effected through two financial statements which the government maintained overstated his assets and collateral for the loans.  Williams sought and was given disclosure of all exculpatory portions of the grand jury transcripts.   In reviewing these materials, he agreed that the fact that he had reported these assets in materially "the same manner in his Chapter 11 proceedings and for tax purposes, belied an intent to mislead the banks, and thus directly negated an essential element of the charged offense." *Id.* at 39.

As a consequence, the district court eventually dismissed the indictment without prejudice having found that the government had withheld evidence that was relevant to an essential element of the crime charged and which created a reasonable doubt about Williams' guilt rendering the indictment suspect.  *Id.*  The Tenth Circuit affirmed the dismissal finding that the withholding of substantial exculpatory evidence form the grand jury substantially influenced the grand jury decision to indict, or at least raised grave doubt that the decision to indict was free from such substantial influence.  *Id.*  The Supreme Court reversed.  The Court stated:

> It would make little sense, we think, to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation.  A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutory's presentation

23

was "incomplete" or misleading." [footnote omitted].  Our words in *Costello* bear repeating:  Review of facially valid indictments on such grounds "would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it.]"  350 U.S., AT 364, 76 S.Ct.  at 409.

Thus, attacks on the efficacy of an indictment based on the Government's failure to provide exculpatory information is likewise no grounds for dismissal.

**4.      Conclusion** :  **Dismissal is Inappropriate Based on Alleged Failure to Present Evidence**

Based on the foregoing, extensive legal guidance, this Court finds that Mix's contention that the initial indictment, the first superseding indictment and the second superseding indictment should be dismissed because of insufficient evidence having been presented to the grand jury is without merit.   Mix's argument that because the content of the text messages and voicemails were not made known to the grand jury, the indictments fail to satisfy the Fifth Amendment's Grand Jury Clause is incorrect.  In essence, Mix posits that because of the nature of the materials, it would be impossible for a grand jury to indict (which contention this Court already rejected spun in a different context.  *See, supra*).  This assertion is clearly like the assertion in *Williams*.  In essence Mix contends this evidence is exculpatory in nature, and based on the holding in *Williams,* this alleged "failure" does not warrant the dismissal of any of the three indictments.

Mix relies on *United States v. Sigma International*, 244 F.3d 841 (11th Cir.  2001), for the proposition that "in order for an indictment to be recognized as actually issuing from a grand jury, it must be the product of an investigative deliberation that is independent of both the prosecuting attorney and the court.  Without a guarantee of independence, the indictment would not be the genuine issue of a grand jury within the meaning of the Constitution." *Id*.  at 856.

24

(Doc. 456-1 at 26 of 40). While this language may support Mix's position, this case was vacated by the Eleventh Circuit (a fact about which Mix was forthcoming). Mix urges this Court to follow four other courts' lead and adopt its "persuasive authority" regardless of the fact that it lacks precedential force. This Court will not accept such an invitation particularly in light of the overwhelming Supreme Court guidance outlined above.

The validity of an indictment is not affected by the character of the evidence considered. *Calandra* and *Costello* so state and this Court will not vary from that standard. Additionally, given the fact that materiality is not an element of the crime charged under § 1512(c), the argument falls even flatter. Finally, Mix's contention is devoid of merit given the fact that in the proceedings with respect to the second superseding indictment, the government agent testified that Mix had admitted to attorneys for BP that he had deleted from his iPhone some text messages and voice mails, including text messages related to the Macondo well." (Rec. Doc. No. 456-6 Exhibit E at 6). As such, the motion will be denied in this regard. The Court will now address the second argument–that is alleged errors in the prosecutor's legal instruction to the grand jury which "substantially interfered with the grand jury's ability to perform its constitutional function."

B.     **Dismissal of Indictment Based on Allegedly Improper Instructions Interfering with Grand Jury's Ability to Perform Its Constitutional Function**

1.     **The Errors Alleged Do Not Reach Constitutional Proportions**

Pretermitting whether the alleged infirmities are actually that, it appears to the Court that Mix relies on *United States v. Peralta,* 763 F. Supp. 14, 19-21 (S.D.N.Y. 1991), for the

proposition that the cumulative effect of all of the alleged defalcations is such that the

indictments are fatally flawed and require dismissal.  This Court discussed *Peralta* extensively in

its previous ruling concerning prejudice sufficient to warrant dismissal as to the original

indictment and the first superseding indictment and found specifically that the actions which had

occurred where insufficient to warrant dismissal.

In *Peralta*, a New York district court dismissed an indictment case concerning

constructive possession of a gun and drugs based on the substantial number of errors.  As this

Court stated previously,

> In *United States v. Peralta*, 763 F. Supp. 14 (S.D. N.Y. 1991), the district court
> concluded that the prosecutor seriously misstated to the grand jury the meaning of
> constructive possession by failing to "distinguish between actual and constructive
> possession in any coherent fashion."  *Id.* at 19.  The district court noted that the
> prosecutor
>
>> clearly failed to instruct the grand jury that it had to
>> find probable cause that the each of the defendants
>> "*knowingly* [had] the power *and the intention* . . . to
>> exercise dominion and control" over the firearm and
>> the drugs.  Indeed, we find no mention whatsoever
>> of the elements of knowledge and intent as they
>> apply to constructive possession.
>
> *Id*.  The court noted that not only did the prosecutor "merely fail to instruct the
> grand jury on a question of applicable law[]" but that he also "provided
> misleading statements of the meaning of constructive possession."  *Id.* at 20.
> However, the district court did not consider those errors alone sufficiently
> prejudicial to warrant dismissal of the indictment. The court concluded that "[t]he
> potential prejudice to the defendants caused by the misleading explanations of the
> law of constructive possession was compounded by the recurring problem of the
> government's reliance on hearsay testimonies before the grand juries."  *Id.*
> Ultimately the court dismissed the indictment concluding that "the defendants
> were seriously prejudiced by the cumulative effect of the government's
> misleading statements  of law and its use of inaccurate hearsay evidence."  *Id.* at
> 21.

Indeed, that inaccurate hearsay evidence was particularly troubling in that the version of the events surrounding the defendants' arrest given by the arresting officer **at trial** and the version related to the grand jury by the sole witness before the grand jury, a special agent of the United States (who was not involved in the arrest) were significantly at odds.   Moreover, the grand jury had requested the special agent be returned to the grand jury four times for further questioning as to details that would impact whether the defendants actually had constructive possession, which indicated that the grand jury itself was concerned about the quality of the evidence before it.  *Id.*  at 16.  The Mix indictments are clearly inapposite to the indictment at issue in *Peralta* and do not warrant dismissal.

The Court found as much in its previous ruling and nothing that occurred subsequent to that ruling and the specificity that was achieved with the second superseding indictment changes the analysis.  Even if all of the infirmities alleged were present, which is not the case, the Court finds that they would not amount to the same amount of prejudice as was present in the *Peralta* case.   The Court will now examine with specificity the alleged "errors."

### 2.   Mix's Contention of "Numerous Errors" is Likewise Misplaced

#### a.  Corrupt Intent Instruction is Not Error

The Court has found the "corrupt intent" instruction[3] to be non-prejudicial in the context of the indictment and the first superseding indictment, and a review of the grand jury transcript with respect to the second superseding indictment demonstrates that the grand jury was specifically charged "Corruptly in this context means the defendant acted knowingly and dishonestly."  (Rec.  Doc.  No.  456-6 Exhibit E at 7).  There is no error.

#### b.   Official Proceeding Instruction Not Prejudicial in Light of Evidence

While admitting that the prosecutor correctly instructed the grand jury that under 18 U.S.C. § 1512(c), that an official proceeding need not have been pending at the time of the defendant's allegedly unlawful conduct, Mix argues that *Arthur Anderson* requires that "a person

---

[3]The Court has previously held:
The prosecutor's error before the grand jury that returned the superseding indictment against Mr. Mix was less significant than those involved in *Peralta* and *Stevens*.  Unlike *Peralta* which involved more than one error  before the grand jury and the effect of cumulative error, here the prosecutor committed a single error before the grand jury; i.e., failing to advise the grand jury of the element that defendant act "corruptly."   There are also facts in this case which mitigate the prejudice resulting from the prosecutors failure to advise the grand jury of the element of "corruptly" before it returned the superseding indictment.  The grand jury had previously returned an indictment for violations of the same statute, and prior to the return of the original indictment had been properly instructed that the defendant must have acted "corruptly."  The prejudice from the prosecutor's omission is further mitigated because  prior to the prosecutor advising the grand jury of the elements of the offense of obstruction of justice, he  gave the grand jury the  proposed superseding indictment which included the "corruptly" element to the grand jury.  There is also a third factor mitigating any prejudice due to the prosecutor's error.  While the evidence for the superseding indictment was being presented to the grand jury, the original indictment, which properly included the "corruptly" language was displayed to the grand jury on a screen.  Given those facts and circumstances, it is reasonable to conclude that the grand jury  was aware of the "corruptly" element, despite the prosecutor's failure to advise the grand jurors of that element. (Doc.  470 at 12).

alleged to have destroyed documents has not violated the statute if he did not act **'in contemplation of any particular proceeding to which those documents might be material**.'" (Doc. 456-1, at 37 of 40) (emphasis added).  Mix then relies on the Fifth Circuit pattern instruction for § 1512(b)(1) for the proposition that the prosecutor should have charged that "at the time of the violative act, the defendant must have foreseen an official proceeding in which the documents might be proffered."  Because this charge was omitted in the May 2, 2012 and March 20, 2013 proceedings, Mix contends this omission was prejudicial because the prosecutor had not presented any evidence from which the grand jury could have found this standard met.

    Pretermitting the correctness of the charge, based on the evidence presented to the grand jury, Mix's assertion again has no merit.  As stated, *supra*, in the context of the denial of Mix's Motion to Dismiss Count II of the original indictment, the Court noted that at the time Mix deleted a certain email string he knew the following:

- There had been a public announcement that the government was investigating the Macondo well incident;

- Mix had received a corporate hold notice with respect to documents (including texts) related to the Macondo well incident;

- A BP vendor had collected hard copy documents from him related to the Macondo well incident; and

- A BP vendor had schedule another meeting to collect additional data from Mix.

and found that a jury could infer that Mix's deletions with respect to and from Contractor with was with the intent to deprive a judicial proceeding of the messages and he could have know that it was foreseeable that by doing so he would "impair the object's . . . availability for use in an

official proceeding." 18 U.S.C. §1512(c)(1). That analysis is equally applicable to the information presented to the grand jury with respect to the first and second superseding indictments. The indictments all make clear that the Legal Hold Notices were issues by BP to Mix to preserve all records concerning the Macondo well incident and in total there were ten of them. Likewise, it is clear that on June 1, 2010, the Department of Justice publically announced civil and criminal investigations concerning the Macondo incident. With evidence presented to that end, a grand jury could reasonably find cause to indict Mix for the October 4, 2010 deletions and August 20, 2010 deletions as impairing those objects availability for use in an official proceeding.

### c.   Failure to Give Nexus Instruction is Not Error

This Court ruled that the nexus requirement is a formulation of the defendant's intent as discussed, *supra*, Indeed, "Numerous courts have held that while the Government must prove a 'nexus' between the defendant's conduct and official proceeding at trial, the Indictment need not allege any such nexus." *United States v. Rand*, 2011 WL  4498866 (W.D.N.C. July 27, 2011) (denying motion to dismiss charge under 18 U.S.C. § 1512(c)(1) for failure to allege nexus in the indictment) citing *United States v. Ring*, 628 F. Supp.2d 195, 223-24 (D.D.C.2009) (denying motion to dismiss charge under 18 U.S.C. § 1512)(c)(2) for failure to plead the requisite "nexus"); *United States v. Black*, F. Supp.2d 513, 542-44 (N.D. Ill. 2006) (denying motion to dismiss charge under 18 U.S.C. § 1512(c) for failure to allege a "nexus"); *United States v. Triumph Capital Group, Inc.*, 260 F. Supp.2d 470, 475 (D. Conn. 2003) (holding that the nexus requirement [with regard to 18 U.S.C. § 1503] need not be alleged in the indictment); *United*

*States v. Gabriel*, 920 F. Supp. 498, 500-01 (S.D.N.Y. 1996) (holding that the indictment need

not allege a "nexus in asserting a violation of 18 U.S.C. § 1512). As such, this argument is

likewise devoid of merit.

> **d.      No Error with Respect to Instruction of "Probable Cause."**

Mix makes the argument that the prosecutor's defining "probable cause" as "reasonable

cause to believe" that Mix had committed the alleged offense incorrectly left an impression that

the prosecution satisfied its burden so long as it was not *unreasonable* to believe that Mix may

have committed the alleged offenses. Then citing the "Handbook for Federal Grand Jurors" with

no further identification other than "page 10," Mix maintains that the proper definition of

"probable cause" is evidence sufficient to persuade the grand jury that the accused "probably

committed" the alleged offense." Mix cites no case law applying this standard in the context of a

grand jury.

The "seminal" publication upon which Mix bases this argument is apparently a handbook

prepared for the use of grand jurors serving in the United States district courts. It is not a legal

monograph, rather its stated purpose is to "acquaint persons who have been selected to serve on a

federal grand jury with the general nature and importance of their role as grand jurors."

*Handbook for Federal Grand Jurors*, Judicial Conference of the United States (2007). The

passage apparently cited in reality found at page 11 provides:

> After all persons other than the grand jury members and any interpreter for a
> hearing or speech impaired juror have left the room, the foreperson will ask the
> grand jury members to discuss and vote upon the question of whether the
> evidence persuades the grand jury that a crime has probably been committed by

the person being investigated by the government and that an indictment should be returned.

The only other use of the word "probably" in the monograph appears at page 17, a "glossary of terms."   It states:

> The finding necessary in order to return an indictment against the person being investigated by the government of a federal crime.  A finding of probable cause is proper only when the evidence presented to the grand jury, without any explanation being offered by the person being investigated, persuades 12 or more grand jurors that a federal crime has probably been committed by that person."

*Id.*  at 17.

Citation to this monograph borders on the absurd.  This pamphlet was prepared to inform lay people in general concerning a grand juror's duties and responsibilities.   There is neither case law in it nor has Mix cited a single case to support  Mix's proposition in this regard,  and the Court will waste no more time and will dismiss this claim.

Thus, the Court finds that there were no errors made.


### C.   Conclusion as to the Motion to Dismiss Due to Constitutional Defects

The Court remains convinced that all three indictments meet conform with requirements of due process and further do not trigger this Court's supervisory power to dismiss the indictment.  First, actual prejudice, which is a requirement for such an exercise, has not been demonstrated.  Moreover, the three underlying purposes that could justify the use of the Court's supervisory power are absent.  There is (1) no violation of a recognized right; (2) judicial integrity is not violated in that the Court is confident that the indictments rest on appropriate considerations; and (3) there was no illegal conduct by the prosecutors alleged or evidence presented to that end.  It is only in those instances that the supervisory power of the Court is

triggered. *United States v. Valdez,* 2011 WL 7143468, *17 (W.D.La. Dec. 30, 2011) citing

*United States v. Hasting*, 461 U.S. 499, 505 (1983). Moreover,

> [ ] the Fifth Circuit has repeatedly cautioned that dismissal of an indictment under the court's supervisory power is an "extreme sanction" which may be used *solely* for those cases presenting "extraordinary situations." *United States v. Fulmer*, 722 F.2d 1192, 1195 (5th Cir. 1983); *United States v. Welborn*, 849 F.2d 980, 985 (5th Cir. 1988); *see also United States v. Santan*, 6 F3d 1, 10 (1st Cir. 1993) ("we have repeatedly cautioned that such powers must be used sparingly") (citations omitted).

*Valdez,* 2011 WL 7143468 at 17. This Court finds that the decision to indict was free from any

undue influence by the prosecution and even if any these "errors" as alleged occurred, such

errors were harmless. Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss the Pending Indictments Due to

Constitutional Defects in the Grand Jury Proceedings (Doc. 456) is **DENIED**.

New Orleans, Louisiana, this <u>10th</u> day of October, 2013.

<u>                                        </u>
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**