IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Case No. 2:12-cr-00171-SRD-SS |
| KURT MIX | * | |
| | * | |
| * * * | | |

**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE GOVERNMENT'S DEMONSTRATIVES**

The defendant has lodged objections to the government's demonstrative exhibits. Some of these objections concern technical issues that the government will address, or involve an exhibit that the government has agreed to withdraw. Moreover, several of the defendant's objections have been addressed by the Court, and are now moot. The remainder of the defendant's objections are without merit. The government responds to the defendant's specific objections as follows:

**Specific Responses**

**I.     Photographic Exhibit**

Pursuant to the Court's ruling, the government will remove the photographs from the demonstrative exhibit showing the parties to the text messages and voicemails relevant to Counts One and Two of the indictment.

**II.    USA Today Demonstrative**

The front page of the June 1, 2010 USA Today newspaper concerns the Attorney General's announcement that the Department of Justice had launched a criminal investigation of the oil spill, a fact that is specifically alleged in the second superseding indictment. (Rec. Doc. No. 424 at 3.) Although the demonstrative is a public document that is self-authenticating, Fed.

1

R. Evid. 902(6), in the interest of judicial economy, the government will withdraw its use of this demonstrative.

**III-VI. Summary Exhibit Showing Text Messages Exchanged With Mr. Flanders**

The government will revise the headings on these exhibits to address the defendant's objections.

**VII.     Mix Call Logs**

The government will work with the defendant on an agreeable method to display redactions on the exhibit.

**VIII.    The Timeline Slides**

As the government has previously explained (Rec. Doc. No. 589 at 8-9), the government complied with the Court's scheduling order by disclosing all demonstratives – including closing demonstratives – by November 8, 2013, even though the defendant chose not to fully comply. The government intends only to use these slides in its closing argument. Because these demonstratives will only be used during closing argument, any objections raised by the defendant that they are argumentative should be denied. The government may use the demonstratives to support any argument that is reasonably based upon the evidence. Moreover, because the government may modify these demonstrative exhibits based upon the evidence admitted at trial, many of the defendant's objections are therefore premature. The remainder of the defendant's objections are incorrect.

    1.     <u>Public Estimates of Flow Rate (Slides #1-#2)</u>

The defendant argues that, under the Court's prior orders, the government cannot introduce evidence that, at or before the time of Top Kill, there was a "public" flow rate estimate of 5,000 BOPD issued by government agencies. That is incorrect. The Court previously held

that the government could not admit the alleged public misstatements of <u>BP executives</u> concerning the flow rate as evidence of the defendant's intent because such misstatements would improperly invite the jury to focus on the bad acts of BP. (Rec. Doc. No. 444 at 5 ("Admitting evidence of the bad acts of others at BP, <u>i.e.</u>, public statements by others at BP alleged to contain false or misleading representations concerning the flow rate from the Macondo well blowout and Top Kill, necessarily bring into focus the acts of BP.").) The Court's order did not, however, preclude the government from offering evidence that there was a public number of 5,000 or that government agencies had issued public estimates of flow rate. Because the public estimate issued by the government, or a public number unconnected to BP, is neither a bad act nor connected to statements made by BP executives, the Court's prior order is inapplicable.

Moreover, as the trial evidence will prove, the defendant was aware of the public estimate because, among other things, this estimate was raised at the KWOP meeting attended by the defendant. Such evidence is highly relevant to the defendant's intent and motive to delete the text message string with Supervisor. Internal BP data and models, including those developed by the defendant, supported flow rates well above both this 5,000 BOPD public estimate of flow rate and the accepted 15,000 BOPD limit for Top Kill. Despite the defendant's knowledge of these facts, there is no evidence that the defendant ever shared with anyone outside of BP these estimates of flow rate, or his subjective belief – which he candidly shared with Supervisor via text messages – that the flow rate was too high for Top Kill to succeed.

    2.    <u>Public Estimates of Flow Rate at the KWOP Meeting (Slides #1-#2)</u>

As set forth in the government's response to Objection VII.1, because the references to the public flow rate estimates issued by government agencies are neither bad acts nor connected to misstatements by BP executives, the Court's prior order is inapplicable. Moreover, the

defendant's knowledge of the public estimate is highly relevant to the defendant's motive and intent. The government will lay the proper foundation for any information discussed at the KWOP meeting.

    3.    <u>The Defendant's Flow Rate Estimates (Slides #1-#2)</u>

The defendant raises several objections concerning the government's discussion of the defendant's flow rate estimates. Because this is a closing argument demonstrative, the government is entitled to use the demonstrative to support argue any reasonable inference based upon the evidence. To the extent the defendant disagrees with the government's argument, he is free to argue otherwise. Moreover, because the government may modify these exhibits based upon the evidence admitted at trial, the defendant's objections are premature.

    4.    <u>Chronology of Top Kill (Slides #1-#2)</u>

The defendant objects to slides #1 and #2 on the basis that the chronology for Top Kill is inaccurate and argumentative. Contrary to the defendant's objection, the government's characterization is accurate, i.e., it is accurate to say that Top Kill was failing after the defendant's text message to Supervisor. Moreover, as discussed above, because the government will only use this demonstrative in closing argument, the defendant is free to argue otherwise. Finally, because the government may modify this slide based upon the evidence admitted at trial, the defendant's objection is premature.

    5.    <u>The Defendant's Text Message to Supervisor (Slides #1-#2)</u>

The defendant objects to the government not including the full quote from the text message the defendant sent to Supervisor and later deleted. The demonstrative does not contain the full quote simply because it would be unwieldy to do so. That text message will be admitted into evidence at trial, and will be the subject of both direct testimony and cross-examination.

There is no risk that the jurors will be confused that text message does not contain additional language. Moreover, because the demonstrative will be used only in closing argument, the defendant is free to present and argue to the jury the full text of the deleted text message.

      6.      <u>The Announcement of Top Kill's Failure (Slides #1-#2)</u>

The defendant argues that the fact that BP announced that Top Kill failed is not relevant to the case. The government will agree to remove the reference to the fact that BP announced the failure of Top Kill. The fact that Top Kill failed, however, is a fact that will be repeatedly raised in the evidence at trial.

      7.      <u>Announcement of Criminal Investigation (Slides #1, #2, #3)</u>

The Court overruled this objection at the November 19, 2013 hearing. (<u>See</u> Nov. 19, 2013 Transcript at 32.) This fact is specifically alleged in the second superseding indictment, and will be proved by the government at trial.

      8.      <u>References to Emails Concerning Grand Jury Subpoenas (Slide #1, #2)</u>

The government revised its opening statement demonstrative slides in accordance with the Court's prior rulings. With respect to the closing arguments, however, the government will use these demonstrative slides to support arguments reasonably based upon the evidence. Because the government may modify these slides based upon the evidence admitted at trial, the defendant's objections are also premature.

      9.      <u>Unrecoverable Text Messages</u>

The government's reference to 32 unrecovered text messages between April 26 and April 30, 2010 is entirely accurate. This Court previously denied the defendant's motion to preclude any reference to 17 unrecoverable text messages from the defendant's iPhone exchanged with Supervisor. (Rec. Doc. No. 432.) As the Court explained, such evidence was admissible

because it was relevant (id. at 2), and the defendant would be free to argue to the jury that the unrecoverable text messages are entitled to no weight (id. at 3). Moreover, the Court stated that it would issue a limiting instruction. The Court thereafter granted, however, the defendant's motion to preclude any reference to deletions of text messages with the defendant from Supervisor's iPhone. (Rec. Doc. No. 546 at 9.) Pursuant to these rulings, the government will properly focus on the defendant's deletions from his iPhone rather than from Supervisor's iPhone. It is a fact that between April 26 and 30, 2010, the defendant deleted 32 text messages with Supervisor, and none of those 32 text messages were recoverable from the defendant's iPhone. Although 15 of those text messages were later recovered from Supervisor's iPhone, the government is entitled to argue in closing argument that but-for the availability of Mr. Sprague's iPhone, all 32 of the above text messages would never have been recovered. The defendant's remaining objections should be addressed through jury argument.

10. <u>Defendant's Deletions – Count One (Slide #2)</u>

Consistent with the revisions made to its opening slides, the government will make the demonstrative more clear that the defendant's deletions occurred in a single operation.

11. <u>Defendant's Deletions – Count Two (Slide #3)</u>

Consistent with the revisions made to its opening slides, the government will make the demonstrative more clear that the defendant's deletions occurred in a single operation within the specified time frame.

12. <u>Defendant's Statement to Deloitte (Slide #3)</u>

The government will remove the reference to Mix's statements concerning possession of "any electronic data" from this slide.

13. <u>Spacing Between Months (Slide #3)</u>

The Court overruled this objection at the November 19, 2013 hearing. (See Nov. 19, 2013 Transcript at 36.)

## IX. Count Two Timeline

The government revised its opening slides consistent with the Court's prior ruling. (Rec. Doc. No. 608 at 1-2.) With respect to the closing arguments, however, the government will use these demonstrative slides to support arguments reasonably based upon the evidence and will modify if needed to conform to the evidence at trial. The defendant's objections are therefore premature.

        Respectfully submitted,

        WILLIAM C. PERICAK
        Director, Deepwater Horizon Task Force

        /s/ Jennifer L. Saulino
        JENNIFER L. SAULINO [Member of DC Bar]
        LEO R. TSAO [Member of NY Bar]
        Deepwater Horizon Task Force
        400 Poydras Street, Suite 1000
        New Orleans, Louisiana 70130
        (202) 445-9674

# CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

/s/ Leo R. Tsao           .
LEO R. TSAO
Deepwater Horizon Task Force
