## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                         CRIMINAL ACTION

VERSUS                                               NO. 12-171

KURT E. MIX                                     SECTION "K"(1)

### ORDER AND REASONS

Before the Court is Defendant's Rule 33 Motion for a New Trial Due to Deficient

Evidence and Various Trial Defects (Doc. 711). Mix contends he is entitled to this relief

because:

1.   the evidence preponderates heavily against the jury's verdict;

2.   numerous trial errors individually and cumulatively affected Mr. Mix's substantial rights, deprived him of a fair trial and undermined the integrity and any confidence in the jury's verdict; and

3.   the Government suppression of information showing the temporal disconnect between the deletion of the Sprague string in early October 2010 and the FBI's investigation and the ensuing grand jury investigation into "Post-Spill matters" is a *Brady* violation requiring a new trial.

For the reasons that follow, the Court finds no merit in this motion.

## I.     BACKGROUND

In its ruling on Defendant's Rule 29 Motion for Judgment of Acquittal (Doc. 710), this

Court provided a comprehensive summary of the evidence adduced at trial which the Court

hereby reiterates and incorporates by reference. (Doc. 816). As to the procedural background,

the Court will address those issues as needed in the following analysis.

## II.    LEGAL STANDARDS–RULE 33 STANDARD FOR NEW TRIAL

Rule 33(a)  provides, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."   As noted, this Court has ruled on defendant's Motion for Judgment of Acquittal and reviewed in detail the trial testimony therein; however, the applicable standard of review under Rule 33 differs.  Also, "motions for new trial are based either on the grounds that the verdict was against the weight of the evidence or that some error was committed by the court or the prosecution which substantially affects the rights of the accused."  *United States v. Simms*, 508 F. Supp. 1188 (W.D.La. 1980).  Mix has raised all three grounds.

"The burden of demonstrating that a new trial is warranted 'in the interest of justice' rests on the defendant.  *United States v. McElwee*, 2010 WL 235007, *2 (W.D. La. Jan. 15, 2010) citing *United States v. Soto-Silva*, 129 F.3d 340, 343 (5th Cir. 1997).  Moreover,  Rule 33 motions are not favored and are viewed with great caution.  *United States v. Blackthorne*, 34 F.3d 449, 452 (5th Cir. 2004).  "The grant of a new trial is necessarily an extreme measure, because it is not the role of the judge to sit as a thirteenth member of the jury."  *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997); *but see United States v. Robertson,* 110 F.3d 1113, 11120 n. 11 (5th Cir. 1997).[1]

---

[1]"'It has been said that on such a motion [for new trial] the court sits as a thirteenth juror.  The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial . . . should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.'" *Id*. at 1120 n.11 citing *United States v. Sinclair,* 438 F.2d 50, 51 n.1 (5th Cir. 1971).  The defendant cited this case for the proposition that the Court must sit as a "thirteenth juror" but failed to include the admonition concomitant with the role.  (Doc. 711-5 at 25 of 52).

**A.      Weight of the Evidence**

As to weight of the evidence, unlike a Rule 29 motion where the evidence must be

viewed in a light most favorable to the verdict, the standard under Rule 33 is more lenient.

Under Rule 33, "the trial judge may weigh the evidence and may assess the credibility of the

witnesses during its consideration of the motion for new trial."  *United States v. Robertson*, 110

F.3d 1113, 1117 (5th Cir. 1997) citing *Tibbs v. Florida*, 457 U.S. 31, 37038 (1982).

> In the Fifth Circuit, "the generally accepted standard is that a new trial
> ordinarily should not be granted unless there would be a miscarriage of justice or
> the weight of evidence preponderates against the verdict." *United States v.
> Wright*, 634 F.3d 770,775 (5th Cir. 2011).  "In determining whether to grant the
> motion, the district court must carefully weigh the evidence and may assess the
> credibility of the witnesses during its consideration of the motion for new trial,
> but must not entirely usurp the jury's function, or simply set aside a jury's verdict
> because it runs counter to the result the district court believed was more
> appropriate." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir.  2005)
> (internal quotations and citations omitted).  Granting a new trial "should be
> exercised infrequently by district courts, unless warranted by 'exceptional'
> circumstances." *Id*. (citations omitted).

 *United States v. Presley,* 2012 WL 4903357, *1 (S.D. Miss. October 16, 2012).  The appellate

court framed the Court's inquiry in *United States v.  Tarango*, 396 F.3d 666 (5th Cir.  2005)

(internal citations omitted) as follows:

> Setting aside a jury's guilty verdict in the interests of justice may be appropriate
> under circumstances where the evidence brought forth at trial may tangentially
> support a guilty verdict, but in actuality, "preponderates sufficiently heavily
> against the verdict such that a miscarriage of justice may have occurred." . . .
> Similarly, while vested with discretion to grant a new trial pursuant to Rule 33 if
> necessary in accordance with the interests of justice, we have observed that this
> power should be exercised infrequently by district courts, unless warranted by
> "exceptional" circumstances.

*Id.* at 672 (internal citations omitted).

### B.      Trial Error

Where the ground for the Rule 33 motion is the alleged commission of error by the trial

court, one court defined that inquiry as follows:

> . . .[T]he trial court . . . has equally broad powers to examine errors which may
> have been committed during the course of the trial.  Where such a motion is
> presented based upon these grounds, the convicted defendant has the burden of
> showing that (1) some error was in fact committed and (2) such error was
> prejudicial to him. . . . In these circumstances, even if an error is found to exist, it
> will be disregarded as harmless unless found to affect the defendant's "substantial
> rights" and the fairness of the trial.  . . .
>
> The test to determine whether an error is of sufficient magnitude to
> warrant a new trial is to discover whether the court can conclude with a fair
> assurance, after carefully examining all of the facts of the case, that the verdict
> was substantially swayed by the error. . . .
>
> The decisive factors for consideration are (1) the closeness of the case; (2)
> the centrality of the issue affected by the error; and (3) the steps taken to mitigate
> the effect of the error. . .

*United States v. Simms*, 508 F. Supp. 1188, 1203 (W.D. La. 1980).  Cumulative error requires

looking at the number of errors  and the  gravity thereof which can be the basis for new trial.

*United States v. Valencia*, 600 F.3d  389, 429 (5th Cir. 2010).  When a new trial motion is sought

on the basis of alleged trial error, if counsel failed to object at trial, this Court applies the plain

error standard; if counsel did object, this Court applies the harmless error standard.  *United*

*States v. Logan*, 861 F.3d 859, 864 n. 3 (5th Cir. 1988).


### C.  *Brady* Error

Finally, where there is error on the part of the Government, in this instance an alleged

*Brady* violation, to establish a due process violation under *Brady*,

> a defendant must show that: (1) evidence was suppressed; (2) the suppressed
> evidence was favorable to the defense; and (3) the suppressed evidence was
> material to either guilt or punishment.  373 U.S. 87, 83 S.  Ct.  1194.  Evidence is

4

material under *Brady* when there is a "reasonable probability" that the outcome of the trial would have been different if the evidence had been disclosed to the defendant. *See Bagley*, 473 U.S. at 682, 105 S.Ct. 3375. A "reasonable probability" is established when the failure to disclose the suppressed evidence "could reasonably be taken to put the whole case is such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435, 115 S.Ct. 1555 (1995). As we noted in *Gonzales*, this standard does not require a defendant to establish that he would have been acquitted had the evidence been disclosed. 121 F.3d at 946. However, the defendant "must establish that the suppression of exculpatory evidence by the government 'undermines confidence in the outcome of the trial.'" (quoting *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555).

*United States v. Runyan,* 290 F.3d 223, 247 (5th Cir. 2002). With these standards in mind, the Court now turns to Mix's contentions.

## III. ANALYSIS

### A. Weight of the Evidence

Mix contends that "[e]ven were (sic) the evidence adduced at trial is constitutionally sufficient to sustain a conviction on Count One (which it was not), the evidence still preponderates so heavily against guilt that the Court should vacate the jury's verdict and grant Mr. Mix a new trial." (Doc. 711-5 at 26 of 52). To that end, Mix incorporates Parts One, Four and Five of his post-verdict Rule 29 memorandum contending in conclusory fashion that the evidence did not come close to satisfying the elements for obstruction of justice.

Likewise, the Court incorporates its findings and its summary of the evidence adduced at trial as delineated in its ruling on Mix's post-trial Rule 29 motion. Weighing that evidence and assessing the credibility of the witnesses under a Rule 33 analysis, Mix has failed to demonstrate a miscarriage of justice or that the weight of evidence preponderates against the verdict. Clearly the convincing and specific testimony of Bill Burch, the consultant with Wild Well Control who worked with Mix on modeling the amount of oil flowing from the Macondo well, demonstrated

that Mix was well aware that the Macondo flow rates were too high for Top Kill to work and that BP was knowingly espousing significantly lower flow rate estimates than it knew were true.

Special Agent Kelly Bryson provided conclusive evidence that Mix (1) destroyed a text message string between Jonathon Sprague, his supervisor who was also involved with the calculation of flow rates; (2) that string contained information concerning knowledge of flow rates exceeding rates that would have demonstrated Top Kill not feasible; (3) Mix would have reasonably foreseen that a grand jury impaneled in the Eastern District of Louisiana particularly in light of the contents of all of the Legal Hold Notices that he had received and acknowledged; and (4) in destroying the text string, Mix could impede that Grand Jury's inquiry into BP's knowledge concerning flow rates.

Dr. Kate Baker testimony and notes provided ample and cogent evidence that at no time during the KWOP meeting did any BP representative indicate that there was evidence that the flow rate was in excess of the amount that would make Top Kill inoperative.  This evidence was supported by the credible testimony of Dr. Curtt Ammerman and Dr. James Redmond. Moreover, the Court found the testimony of Ole Rygg concerning flow rate discussion at the KWOP meeting unconvincing.

Again, the specifics of this testimony is set forth in greater detail in the Court's Order and Reasons on the Rule 29 motion.  Based on those findings and the Court's analysis of the evidence in light of the more lenient Rule 33 standards, the Court finds that this conviction is not an instance where the evidence "tangentially" supported a guilty verdict, and the evidence does not preponderate against the verdict such that a miscarriage of justice may have occurred.

### B. Trial Errors

#### 1. Retroactive Misjoinder of Count 2

Mix contends that the retroactive misjoinder of Count Two "was an error that caused such significant prejudice to Mr. Mix that **it facilitated an unreasonable conviction on Count One without a sufficient evidentiary basis**." As stated in *United States v. Jones*, 16 F.3d 487, 493 (2nd Cir. 1994):

> "Retroactive misjoinder" arises where joinder of multiple counts was proper initially, but later developments–such as a district court's dismissal of some counts for lack of evidence or an appellate court's reversal of less than all convictions–render the initial joinder improper. *See generally*, 8 James Wm. Moore, *Moore's Federal Practice,* ¶ 8.06[3] (2d ed. 1993). In this Circuit, "[t]o invoke retroactive misjoinder," a defendant "must show compelling prejudice." *United States v. Warner,* 690 F.2d 545, 553-54 (6th Cir. 1982). Prejudicial spillover from evidence used to obtain a conviction subsequently reversed on appeal may constitute compelling prejudice. *See Novod*, 927 F.2d at 728.

*See also United States v. Vebeliunas*, 76 F.3d 1283, 1293-94 (2d Cir. 1996).)

The Second Circuit has articulated the following three-part test for determining whether there was likely prejudicial spillover from submitted in support of convictions that were set aside after trial. A court is to consider: "(1) whether the evidence introduced in support of the vacated count 'was of such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant on the remaining counts,' (2) whether the dismissed count and the remaining counts were similar, and (3) whether the government's evidence on the remaining counts was weak or strong." *United States v. Hamilton*, 334 F.3d 170, 182 (2nd Cir. 2003).

In this instance, the Court finds this alleged "error" without merit for a number of reasons. First, there was sufficient evidence tied solely to Count 1 which allowed the jury to find Mix guilty as to Count 1. Thus, Mix's opening premise, that is the joinder of Count 2 "facilitated

an unreasonable conviction on Count One **without a sufficient evidentiary basis**,"  is without basis in fact.[2]

    In addition, there is simply no showing of "compelling prejudice."   Indeed, Mix was acquitted on Count 2 which clearly demonstrates that the jury was capable and in fact actually segregated the evidence which was relevant as to Count 1 and as opposed to Count 2. The split verdict demonstrates that there was no prejudice since "[t]he key to the retroactive misjoinder test is 'whether the jury was able to distinguish between counts or between defendants, and to assess separately the evidence pertinent to each.'"  *United States v.  Ghavami*, 2012 WL 2878126, at *16 (S.D.N.Y. July 13, 2012) citing *Hamilton*, 334 F.3d at 183.  In addition, this Court instructed the jury to consider each count separately and from the decision it made, it is apparent that the jury followed the Court's instructions.  *United States v. Bernegger* 661 F.3d 232,  237 (5th Cir. 2011).

    Also, using the *Hamilton*  factors noted above, there was no likely prejudicial spillover. The evidence introduced in support of Count 2 was not of such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant as to Count 1. While the Count Two also concerned deletion of a text message between Mix and Wilson Arabie as well as voice mails left by Wilson Arabie and Jonathon Sprague, they were insufficiently similar to cause confusion.  Finally, as previously stated the government's evidence on the remaining counts was sufficient for a conviction.

---

[2]In defendant's Reply Brief, he contends that his argument is not based on this contention, contrary to the opening sentence of his brief on this point; rather he contends this argument is premised on his Rule 29 Motion for Acquittal filed during trial, that is that Count 2 was not legally viable.  Pretermitting the question of whether Count 2 was so infirm as to require dismissal, the Court finds that unequivocally Mix was not sufficiently prejudiced to render the Retroactive Misjoinder Doctrine applicable to this claim.

Finally, the doctrine is inapplicable.  This situation is not an instance where Mix was

tried on multiple counts and Count Two was reversed or vacated as a matter of law on a ground

that required dismissal of that count.   Generally, for "retroactive misjoinder" to apply,  it must

be the result of a court's dismissal of a count as legally invalid.   Here, a jury acquitted Mix on

Count 2; Count 2 was never dismissed on legal grounds, nor should it have been. *United State v.

Jones*, 16 F.3d 487, 493 (2nd Cir. 1994) (joinder of multiple counts  initially proper, but district

court's dismissal of some count for lack of evidence or an appellate court's reversal of less than

all convictions can render the initial joinder improper).   *See United States v. Edwards*, 303 F.3d

606, 640 5th Cir. 2002).  Finally, the Court finds that Kurt Mix has not proven "prejudice so

pervasive that a miscarriage of justice looms.'" *United States v.  Trainor,* 477 F.3d 24, 36 (1st

Cir.  2007) (quoting *United States v.  Levy-Cordero*, 676 F.3d 1002, 1008).


> **2.     The Government's Improper Reliance on the BP Legal Department's "Hold Order" in Violation of Fifth Circuit Law**

Mix's third argument focuses on "the Government's improper reliance on the BP Legal

Department's 'hold orders.'"  "Putting aside whether the Court's original ruling on the defense's *in

limine*  motion was correct, the Government went well beyond what the Court's opinion and Fifth

Circuit law permitted it to do."  (Doc. 711-5 at 32 of 52).  The Court finds this argument

completely unavailing.

To begin, the Court reiterates and incorporates in total the reasoning and legal analysis

found in its Order and Opinion entered with respect to Mix's "Motion in Limine to Preclude the

Government from Improperly Relying Upon the BP 'Litigation  Hold Notices" (Doc. 379).

These documents were relevant and admissible for purposes of demonstrating motive and intent

and to the foreseeability of a grand jury investigation.  Also, the redactions sought by defendant

were the very portions of the statements that were significant in establishing the relevance of the

evidence. (Doc. 379 at 5 of5).   In addition, the Court finds that at no time did the Government

overstep this Court's order.   The Government never argued that the LHOs could be standalone

evidence of obstruction of justice.  *United States v. Cordell*, 912 F.2d 769, 775-77 (5th Cir.

1990).

      Moreover, the Court specifically charged the jury as to the proper use of this evidence.  It

delivered a limiting instruction when these notices were first introduced.  (Transcript 621-22).

At that time the Court stated:

> "The government is about–or has introduced, you haven't seen it, into
> evidence certain Legal Hold Notices issued by BP and received by the defendant.
> At Least that's the allegation.
>       The Legal Hold Notices may be relevant to your determination of whether
> a grand jury proceeding was reasonably foreseen by the defendant or whether the
> defendant had a corrupt intent to obstruct justice.  You are reminded that mere
> non-compliance with the Hold Notices in not standing alone obstruction of justice
> as charged n the indictment.  You may not assume that if the defendant violated
> the Hold order or Hold Notice he has committed obstruction of justice.  The Legal
> Hold Notices were not from the government but from BP.  Simply put, it is not
> enough for you to convict the defendant if he deleted something from his iPhone
> that BP had instruct him to preserve.

(Transcript 621-22).  Then, at the close of the trial, in its final instructions to the jury, the Court

specifically charged as follows:

### CAUTION — VIOLATIONS OF INTERNAL COMPANY POLICY

      You have heard testimony that the defendant's employer, BP, had an
internal company policy requiring employees to preserve all documents, including
text messages and voice mails, that contained information relevant to the
Deepwater Horizon incident.  **I instruct  you that a violation of such an
internal company policy — even an intentional violation of such a policy — is
not itself a criminal offense, and in this case a violation of BP's internal
company policies would not establish that the defendant had obstructed**

**justice.** At most, such violations might subject an individual to civil, employment, or professional sanctions, which are not the same thing as a criminal punishment. **Federal criminal law does not place any affirmative obligation on individuals to preserve documents; it merely prohibits individuals from destroying documents with the "corrupt" intent of obstructing a grand jury proceeding.**

To the extent BP advised its employees that the failure to preserve documents could expose an employee to criminal prosecution or punishment, I am instructing you that such statements are not statements of the applicable law.

However, the "legal hold orders" may be relevant to your determination of whether a grand jury proceeding was reasonably foreseen by the defendant or whether the defendant had a corrupt intent to obstruct justice.

(Transcript at 2758-59) (emphasis added).

Finally, even in the Government's closing arguments, counsel made clear that these

documents were to be examined as evidence of Mix's corrupt intent.  (Transcript 2607-2611).

No "bootstrapping" occurred.  No error was made in this respect.    The LHOs were pre-admitted

by agreement of defense counsel.  As such the Government was entitled to offer the evidence

and make proper arguments about them.  *United States v.  Reagan*, 725 F.3d 471, 493 (5th Cir.

2013); *United States v.  Rodriguez*, 43 F.3d as 123 (5th Cir.  1995) (wide latitude at closing).
There was

no error in this regard.


     **3.**     **The  Improper Admission and References to the 17 Unrecovered Text Messages in the Sprague String**

Mix contends that the Court erred in allowing reference to the 17 unrecovered text

messages at trial.  This issue was also the subject of extensive briefing prior to trial, culminating

with the Court's "Order and Opinion" disposing of defendant's "Motion *in Limine* to Preclude the

Government from Making Reference at trial to the '17Unrecovered Text Messages.'"  (Doc. 432).

The Court held that the unrecovered text messages qualified as relevant evidence, and that any

unfair prejudice would be countered with a limiting instruction.

Indeed, the Court issued its first such instruction at the time requested by defense

counsel.

The Court stated:

> So you have seen and heard evidence that the government's expert was not able to recover 17 of the text messages between the defendant and Mr. Sprague. You are instructed that you may consider the evidence among the totality of all the evidence that you will hear and have heard and are seeing or will see in this case.
> You may also consider surrounding evidence to assist you in determining whether you believe the deletion of those 17 unrecoverable text messages is relevant or not to the crimes charged here.
> You may not, however give undue importance to the 17 unrecovered text messages.  You must look at them in the context of this entire case.

(Transcript at 576-77).  The instruction was given again on December 11, 2013, prior to the

testimony of Jeffrey Bolas as well. (Transcript at 2018-19).

The Court repeated this instruction again in its final instructions:

**WITH RESPECT TO 17 UNRECOVERED TEXT MESSAGES**
**CONCERNING EXHIBIT GX3 AND 3A**
**AND THE TESTIMONY OF MR. BOLAS AND AGENT BRYSON**

> You have heard and seen evidence that the Government's expert was not able to recover 17 of the text messages between the defendant and Mr.  Sprague. You are instructed that you may consider this evidence among the totality of all of the evidence that you have heard or seen in this case.  You may also consider surrounding evidence to assist you in determining whether you believe that the deletion of those 17 unrecoverable text messages was obstruction of justice.  You may not, however, give undue weight to the 17 unrecovered text messages.

(Transcript at 2753).

In addition, contrary to the defendant's protestations, the Court finds that the Government offered evidence supporting all of the underlying facts necessary for the introduction of this testimony just as it had represented to the Court that it would do. Specifically, the Government proved that the deleted messages had been exchanged between Mix and Jonathon Sprague between April 26-30 which was the same time that these two individuals were working on flow rates.[3]  The Court finds that Mr. Burch's testimony as raised by the defendant did not make the inference unreasonable.  Clearly, Mix was involved in calculations of flow rate.  The testimony at trial established this fact beyond peradventure.  This argument simply has no merit.

4.  **Prejudice Resulting from the Inconsistency Between the Government's Pre-Trial Representation and Proof at Trial Regarding the Text Messages in the Sprague String**

Mix contends that pre-trial, the Government maintained that Mr. Mix obstructed a grand jury's investigation into "flow rate" issues, and that Count One would have had an identifiable relationship to flow rate.  Thus, the 17 unrecovered text messages and the one on May 26, 2010 were the only messages that the Government would show had some identifiable relationship to flow rate.   At trial, Mix contends that the one May 26, 2010 text "burgeoned" to 31 text messages, with Agent Bryson's testimony that these were "relevant" or "could be important" to "her investigation" but were not about "flow rate" per se.

_____

[3]Clearly, the Government fulfilled its promise to provide (1) powerful circumstantial evidence that they contained important information about the oil spill (2) that the circumstantial evidence would strongly support that there is a nexus between the messages and the foreseeable grand jury proceeding and (3) that the unrecoverable text messages likely concerned issues relating to flow rate.

The Court finds this argument specious at best.  To begin, there was no objection lodged and no motion to continue requested based on such "surprise." *United States v. Sparks*, 2 F.3d 574, 584 (5th Cir. 1993) (normal remedy for surprise is to request a recess) citing *United States v. Jennings*, 724 F.2d 436 445 (5th Cir.) (stating that the normal remedy for surprise is to request a recess), *cert. denied,* 467 U.S. 1227 (1984).  Moreover, made pellucid through the testimony was that while most of the information that had been deleted, and recovered, was not **specifically** about "flow rate,"  the recovered, deleted texts could have provided clues to lead to other information concerning the "post-spill" misdeeds of BP.

This argument is also without basis considering all of these texts had been disclosed to the defendant well before trial.  Clearly, the defendant's objection is that the government did not disclose its full theory of the case prior to trial.  The Court is unaware of any duty on the part of the Government to do so.  There is no merit in this contention.  *United State Hajecate*, 683 F.2d 894, 898 (5th Cir. 1982); *United States v. Castro*, 15 F.3d 417, 422-23 (5th Cir. 1994). In addition, any claim that there was a variance between the indictment and the evidence at trial is baseless, and the citation to *United States v. Baker,* 544 F. Supp. 2d 522 (E.D.La. 2008) is misplaced as the issue in *Baker* revolved around vague language ("the first semester of 2002") as opposed a clear time frame alleged in the instant indictment.  The Second Superseding Indictment (Doc. 424) upon which this case proceeded to trial cured any problems as to variance; Mix was charged with deleting the entire string of text messages with Mr. Sprague.  The testimony of Agent Bryson concerned that string.

14

5.      "The Kinkos Related Misconduct" Debacle Which Created Spillover
        Prejudice on Count One That Was Not Cured by the Court's
        Instruction and Could Not have Been Cured by Anything Short of a
        Mistrial.

Mix opines that the Court "should also grant Mr. Mix a new trial on the ground that the jury's consideration of Count One was unfairly and prejudicially impacted by Government counsel's improper insinuations of "Kinkos-related misconduct" in the face of a prior *in limine* ruling by the Court and a pre-trial Government concession that it had "no evidence" of such misconduct."  (Doc. 711-5 at 41 of 52).

To begin, the issue of the Government's "insinuations" of uncharged misconduct with respect to the Kinkos reproduction of the Project Book was first raised in Defendant's Motion in Limine to Preclude the Government from Lodging Newly-Minted Insinuations fo Uncharged "Kinkos Misconduct." (Doc. 573).  Oral argument was had on this issue on November 19, 2013, and "Order and Reasons" were entered on November 21, 2013.  (Doc. 608).  In the ruling, the Court memorialized the Government's position that it had no evidence concerning any misdeeds with respect to the Project Book or any evidence that Mix and Mr. Arabie had a plan to alter the project book in a criminal manner.  As such, the Court granted defendant's motion to prevent the Government from insinuating criminal conspiratorial activity with respect to the Project Book during opening.  Moreover, the Court struck references concerning meetings and texts from demonstratives along those lines that the Government sought to use at trial.  The Court did leave the door open for the Government to elicit testimony from Mr. Arabie through examination at trial concerning his activities as they concerned Mr. Mix, including the Project Book, and averred that it would revisit the issue of the appropriate  use of same in closing argument.  (Doc. 608 at 1- 2 of 3).

15

After the examination of Mr. Abadie, counsel for Mix filed Defendant's Motion for a Mistrial With Prejudice (Doc. 667) on the morning of December 10, 2013.  The motion was discussed by the Court at the beginning of the trial on December 10th (Transcript at 1712-1715), and again before recessing for lunch (Transcript at 1798-1892).  Argument was had (Transcript at 1847), and the Court denied the motion for mistrial and for the disqualification of the prosecutor, Jennifer Saulino. (Transcript at 1869-72).  In essence the Court found that because there was insufficient evidence, the probative value (and relevance) concerning handwritten notes in the project book of Kurt Mix and the "Big Book" and any unindicted, alleged misdeeds as to the Big Book and the Project Book, and any copying thereof at Kinkos, was outweighed by its prejudicial nature.[4]  (Doc. 672 and Transcript at 1872).  As a result, the Court granted defendant's motion to strike the evidence in that regard but denied the motion to disqualify the prosecutor.  In addition, a suggested instruction to cure any prejudice was presented by the defendant and the Government which the Court adopted in substance, albeit not verbatim.  As such, the Court delivered the following limiting instruction at the beginning of the trial on the following day.  The Court stated:

> On Monday, you heard testimony from Mr. Wilson Arabie which in part concerned Mr. Mix's taking notes and writing in the margins of certain documents. You also heard testimony concerning the Project Book (Exhibits 51A) and the "Big Book" (Exhibit 57) and the copying of one or both in whole or in part at Kinkos by Mr. Arabie.

> I have ruled that this evidence as to the taking of notes or writing in the margins of unspecified documents by Mr. Mix or the copying of the "Project Book" and/or the "Big Book" at Kinkos is not relevant to the issues to be decided by you in this case.

---

[4]In reviewing the materials, the Court found a clerical error in its written ruling and will order that the seventh line of it Order of December 10, 2013 (Doc. 672) be amended to read "thereof at Kinkos was outweighed by the **prejudicial nature thereof**. As a result, the Court ordered that it".

Therefore,  you are instructed to absolutely disregard such evidence and any inference made by the Government of wrong-doing as between Mr. Arabie and Mr. Mix with respect to these books in your deliberations.

You may, however, consider the transcript and recording of the voicemail left by Mr Arabie on Mr. Mix's phone in relation to the charges contain in Count II of the Indictment.

(Transcript at 2019).

At the close of trial, the Court also included the following in its jury instructions:

### TESTIMONY OF MR. WILSON ARABIE

Certain testimony was adduced of Mr. Arabie, the point of which was for the Court to make an ultimate determination of relevance.  I have done so.

You heard testimony from Mr. Arabie which in part concerned Mr. Mix's taking notes and writing in the margins of certain documents.  You also heard testimony concerning the Project Book (Exhibit 51A) and the "Big Book" (Exhibit 57) and the copying of one or both in whole or in part at Kinkos by Mr. Arabie.

I ruled that this evidence as to the taking of notes or writing in the margins of unspecified documents by Mr. Mix or the copying of the "Project Book" and/or the "Big Book" at Kinkos is not relevant to the issues to be decided by you in this case.  Therefore you have been instructed to absolutely disregard such evidence and any inference made by the Government of wrong-doing as between Mr. Arabie and Mr. Mix with respect to these books in your deliberations.  You may, however, consider the transcript and recording of the voicemail left by Mr. Arabie on Mr. Mix's phone in relation to the charges contained in Count II of the Indictment.

(Transcript at 2752-53).

The Court finds that these instructions were sufficient to cure any alleged prejudice, and in no way could this "error" be seen to have to affected the defendant's "substantial rights" and the fairness of the trial.   As stated, there was sufficient evidence as to Count 1 to support a guilty verdict, this evidence did not go the central issue of the case in that the Court made certain that the jury understood that the evidence of some extrinsic, uncharged other scheme did not exist, and the Court took sufficient steps to abate any error.

17

Moreover, the Court rejects any argument by defendant that prejudice could be presumed for both counts because the government "interrelated" the counts. The same analysis that the Court made with respect to the "spillover" effect of Count 2 as to Count 1 applies with equal force to this argument and is reiterated herein.

6.      **Clear Misstatements and Improper Statements During Closing Arguments**

Defendant contends that the Government made 14 separate misstatements of evidence and improper statements during its closing arguments. Mix argues that "the Government either misrepresented the evidence, misstated the law, improperly commented on the fact that Mr. Mix did not testify or disparaged defense counsel in a manner that prejudiced Mr. Mix" which the defendant maintains constitute plain error. As no objections were raised by Mix during closing arguments, clearly that is the appropriate standard. *United States v. Rashad*, 687 F.3d 637, 643 (5th Cir. 2012).

The Fifth Circuit in *United States v. Reagan*, 725 F.3d 471 (5th Cir. 2013) provided the following guidance:

> "Counsel is accorded wide latitude during closing argument." *United States v. Rodriguez*, 43 F.3d 117, 123 (5th Cir. 1995) (quoting *United States v. Willis*, 6 F.3d 257, 263 (5th Cir. 1993)). Although a "prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence," *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008), "[r]eversal based on improper argument by the prosecutor is not called for when there has not been a strong showing of a deleterious effect upon the right to a fair trial. " *Rodriguez*, 43 F.3d at 124. "The closing argument must be analyzed in the context of the entire trial to determine whether it affected substantial rights of the accused. *Id.* "When analyzing the impropriety fo prosecutorial comments, the central issue for this court is 'whether the prosecutor's remarks cast serious doubt on the correctness of

18

the jury's verdict.'  This step 'sets a high bar.'"  *Rashad*, 687 F.3d at 643 (citation omitted) (quoting *United States v. Gracia*, 522 F3d 597, 603 (5th Cir. 2008).

*Id.* at 492.

The Court will take these bullet points up seriatim.  To the extent that the Court relies on the analysis of evidence and witnesses it made in its Rule 29 ruling, the Court in the context of this ruling has weighed that evidence  and assessed the credibility of the witnesses' testimony in reaching the following conclusions as required under Rule 33:

> i.    Defendant argues that the Government improperly "conflated" the fact that the grand jury investigation was ongoing at the time of the deletions, but the Grand Jury not being empaneled until December of 2010 and that it had prejudicial effect because the Government failed to prove one or more of the essential elements of the crime.  It is clear from the record as outlined in detail in the Court's ruling on defendant's Rule 29 Motion and in light of the Rule 33 standard of review, this allegation is without basis. In addition, even if it were erroneous, this would not cast serious doubt on the correctness of the jury's verdict.

> ii.   Mix contends that the Government misstated the evidence that Mix never disclosed to the Government his higher flow rate models.  Reading the Government's argument in light of the evidence presented at trial, and for the reasons again outlined in the Court's ruling on defendant's  Rule 29 Motion, and in light of the Rule 33 standard of review the Government

had a basis to make this argument; moreover, this would not cast serious doubt on the correctness of the jury's verdict.

iii.   Mix states that the Government erroneously argued that the message string with Jonathan Sprague was the only place where Mix had disclosed his belief that Top Kill.  For reasons  outlined in the Court's ruling on defendant's  Rule 29 Motion  and in light of the Rule 33 standard of review, the Government had a basis to make this argument; moreover, this would not cast serious doubt on the correctness of the jury's verdict.

iv.   Mix argues that the Government's statement in closing that the flow rate models "were not hypothetical" was a misstatement of fact.  The Court recognizes that all modeling constitutes estimates.  However, semantical parsing over the meaning of "hypothetical" does not constitute error particularly in light of the fact that BP did make these estimates. Clearly based on the testimony of Mr. Burch, as well as for the reasons outlined in the Court's ruling on defendant's  Rule 29 Motion  and in light of the Rule 33 standard of review, the Government could make this argument. Moreover, even if it were error, it would be sufficient to cast serious doubt on the correctness of the jury's verdict.

v.   Mix makes another claim concerning the Government arguing that the defendant never shared his higher flow rate number or his belief that Top Kill wouldn't work with the Government.   For reasons  outlined in the Court's ruling on defendant's  Rule 29 Motion  and in light of the Rule 33

standard of review, the Government had a basis to make this argument; moreover, this would not cast serious doubt on the correctness of the jury's verdict.

vi.     Mix argues that the Government improperly argued that Mix did not disclose the modeling at the KWOP meeting.   For reasons outlined in the Court's ruling on defendant's  Rule 29 Motion and in light of the Rule 33 standard of review, the Government had a basis to make this argument; moreover, this would not cast serious doubt on the correctness of the jury's verdict.

vii.    Mix contends that the Government's argument that "you didn't hear from any Government scientists, right, who were present at that meeting, tell you that there were flow rate numbers higher than 15, 000 presented that day.  You only heard from Dr. Ammerman and Dr. Redmond, and . . . they told you the exact opposite, right?" Transcript at 2630).   Reviewing the Government's closing testimony in context, Mix's argument is without any basis in fact.  The Government simply pointed out that Mix's attorneys had vouchsafed that the jury would hear specific testimony that flow rate numbers could be "way higher than 15,000 barrels of oil per day, as high as 87,000."  (Transcript at 2629-30).


"It is not error to comment on the defendant's failure to produce evidence on a phase of the defense upon which he seeks to rely. " *United States v.*

*Dula,* 989 F.2d 772, 777 (5th Cir. 1993).  In addition, for reasons outlined in the Court's ruling on defendant's Rule 29 Motion, the Government had a basis to make this argument; moreover, this would not cast serious doubt on the correctness of the jury's verdict.

**viii.**   Mix also contends that the Government "seriously misstated the evidence" where counsel contended that Dr. Ole Rygg admitted under oath in a deposition previously that he did not present any flow rate numbers that were higher than 15,000 BPD at that [KWOP] meeting.  The Court finds there was sufficient record evidence to make this argument for reasons outlined in the Court's ruling on defendant's Rule 29 Motion and in light of the Rule 33 standard of review; this alleged error would not cast serious doubt on the correctness of the jury's verdict.

**ix.**   Mix argues that arguments made concerning the circumstances under which the picture of the defendant was taken were improper because (1) there was evidence admitted at trial that addressed the circumstances surrounding the deletions and (2) that the government impermissibly commented on the defendant's failure to testify.  The quotation cited is taken out of context.  In the objected to argument, the Government was commenting on the promises made in Mix's opening statement that proof would be adduced concerning the circumstances of the deletion being the

22

"most human noncriminal act imaginable" because of Jonathon Sprague's teasing Mix and that the defense's iPhone expert would show "how easy it is to go in to clear out a picture and end up not hitting the right button. One button, the blink of an eye, the entire string is gone." (Transcript 2515-16).

"A prosecutor may comment on the failure of the defense to follow through on opening statement promises." *United States v. Fowler*, 2000 2L 729380, *6 (5th Cir. 2000).   Certainly, in light of the complete testimony of Jeffrey Bolas, the Court finds there was sufficient record evidence to make this argument for reasons outlined in the Court's ruling on defendant's  Rule 29 Motion  and in light of the Rule 33 standard of review, and this alleged error would not cast serious doubt on the correctness of the jury's verdict.

**x.**    Mix contends that the argument made by the Government with respect to GX-35 "telling him that the Government had opened a criminal investigation, and instructed him on what to do if he received a Grand Jury subpoena" was incorrect.  This contention belies the clear, unambiguous language of that email of September 23, 2010.  There was sufficient record evidence to make this argument for reasons outlined in the Court's ruling on defendant's  Rule 29 Motion and in light of the Rule 33 standard

of review; moreover, this alleged error would not cast serious doubt on the correctness of the jury's verdict.

xi.  Mix contends that the Government improperly "conflated" a violation of the Legal Hold orders with corrupt intent.  The Court has addressed this argument in this Order and finds this contention without any merit whatsoever particularly in light of the numerous instructions it gave the jury in this regard.   There was sufficient record evidence to make this argument for reasons outlined in this ruling as well as the Court's ruling on defendant's  Rule 29 Motion and in light of the Rule 33 standard of review.  In addition,  this alleged error would not cast serious doubt on the correctness of the jury's verdict.

**xii, xiii, and xiv.**

All of these "errors" were made in the context of rebuttal.  "Criticism of defense theories and tactics is proper subject of closing argument." *United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997);   *United States v. Candler*, 133 F.3d 929 at *5 (9th Cir. 1998); *United States v. Streml*, 744 F.2d 1086, 1090 (5th Cir. 1984). These arguments are re-hashing of the same substantive arguments made and found without basis in the Court's reasons herein.  In addition, there was sufficient record evidence to make these arguments for reasons outlined in the Court's ruling on defendant's  Rule 29 Motion  and in light of the Rule 33

standard of review.  There is no clear error present; moreover,  these alleged

errors would not cast serious doubt on the correctness of the jury's verdict.

### 7.    Introduction of Evidence Regarding Statements and Meeting to Which Mr.  Mix had No Demonstrated Connection

Mix complains of the Government being allowed to introduce evidence about flow rate

and/or Top Kill that involved statements and meetings to which Mr.  Mix had no demonstrated

connection–that being (1) a May 23, 2010 meeting involving Secretary  Salazar and the slide

deck presented to him there and (2) the Government's questioning of Dr.  Curtt Ammerman

about whether he "trusted BP's so called 'best estimate' of 5000 barrels per day giving the jury

the impression that Mix had been involved in the duping."

As to the first issue concerning the slides and a proper connection to Mix, the Court held

a hearing during the trial concerning this matter.  (Transcript 754-801).   Specifically, the

testimony of Mr. Kirton convinced the Court that a proper foundation was laid as to the

admissibility of these documents. (Transcript 795-98).  The Court reiterates and stands by its

ruling as to the admissibility of the slide evidence.  (Transcript 798-801).   No error was made.

As to the  allegedly improperly admitted testimony concerning a meeting attended by Dr.

Curtt Ammerman, wherein BP personnel (not including the defendant) presented information

concerning a flow rate estimate of 5,000 (Transcript at 1197-2000), again there is no error.

Defense counsel first introduced evidence of the notes of that meeting over the objection of the

Government.  (Transcript 1184-97; DX728). The Government noted at the time that those

documents would be relevant to the testimony of Curtt Ammerman. (Transcript at 1191).  And

25

indeed, the testimony to which Mix objects is the direct result of his opening of this door.  There is no error.  *Ohler v. United States*, 529 U.S. 753, 755 (2000) ("Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted." ).  Even if it were, this evidence and testimony did not affect the defendant's "substantial rights" and the fairness of the trial.

Finally, Mix opines "Although they are too numerous to include in this motion, the defense incorporates all of the rule 401 and 403 objections that it lodged prior to trial and during trial with respect to the Government's efforts to falsely and baselessly insinuate that Mr. Mix was involved in misleading the public or government officials and scientists about flow rate during the Macondo response effort."  Likewise, the Court reiterates and incorporates by reference the voluminous rulings made on all of the objections raised prior to and during trial.  As the record demonstrates, counsel were relentless in their defense of Mr. Mix.  The Court is convinced that Mr. Mix, in the context of this motion, received a fair trial and was not subject to any unfairness and that his substantial rights to a fair trial were amply guarded.

### C. Alleged Brady Violation

Mix also contends that the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963) because it failed (1) to disclose in a timely manner when the FBI began to criminally investigate the "post-spill matters" to which the Mix-Sprague text messages were relevant and (2) never disclosed to the defense when the grand jury investigation in the Eastern District of Louisiana began to investigate the post-spill matters.  Mix contends that it was not until trial did his

counsel learn that the criminal investigation into "post-pill matters" did not begin until after the Sprague string was deleted.

As previously noted, in order for the defense to establish a due process violation under *Brady*, a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment.  373 U.S. 87, 83 S.  Ct.  1194.   Moreover for the evidence in question to be material in nature, there must be a "reasonable probability" that the outcome of the trial would have been different if the evidence had been disclosed to the defendant.  *See Bagley*, 473 U.S. 667,  682, 105 S.Ct.  3375.  A "reasonable probability" is established when the failure to disclose the suppressed evidence "could reasonably be taken to put the whole case is such a different light as to undermine confidence in the verdict." *Kyles v.  Whitley*, 514 U.S. 419, 435, 115 S.Ct.  1555 (1995).  The defendant "must establish that the suppression of exculpatory evidence by the government 'undermines confidence in the outcome of the trial.'" (quoting *Kyles*, 514 U.S. at 434, 115 S.Ct.  1555).

While the Supreme Court has not ever expressly held that evidence that is turned over to the defense during trial has been "suppressed" within the meaning of *Brady*, the Fifth Circuit **has** held that such evidence is **not considered to have been suppressed**.  *Powell v. Quarterman*, 536 F.3d 325, 335 (5th  Cir. 2008) (material turned over to defense during trial is not considered to have been suppressed); *United States v. Williams*, 132 F.3d 1055, 1060 (5th Cir. 1998) ("Because the government produced the allegedly inconsistent statement during the trial, the evidence was not suppressed.).  Thus, it is not clear that the alleged *Brady*  material would be considered as such under the law as interpreted by the Fifth Circuit.

Moreover,  the materiality of these materials is suspect considering that the timing of the impaneling of the grand jury is not a relevant element of the crime charged.  As long as Mix would have reasonably foreseen that a grand jury impaneled in the Eastern District of Louisiana particularly, when the grand jury is actually impaneled is irrelevant.  In addition, to the extent that in some manner Mix's counsel did not have the proper opportunity to cross-examine FBI Agent Kelly Bryson, the Court finds that Mix was not prejudiced and as such is not grounds for granting this motion.  *United States v. Stephens*, 964 F.2d 424, 435-36 (5th Cir. 1992).

Mix's counsel vigorously cross-examined Agent Bryson.  The defendant had every opportunity to use effectively any supposedly newly disclosed information at trial, including an overnight break during defense counsel's cross-examination of Agent Bryson, which the Court allowed counsel.  Indeed, in the context of the additional text messages about which Mix's counsel complains, the Court recognized that Agent Bryson could be recalled to the stand.  Mix's counsel did not choose that avenue either.  In addition, if counsel truly felt that it did not have a sufficient opportunity to make effective use of the information, the defendant should have filed a motion to continue the trial *United States v. Ramirez*, 810 F.2d 1338, 1343 (5th Cir. 1987).

Finally, there truly was no late disclosure.  The document that refreshed Agent Bryson's recollection regarding the impanelment date of the grand jury was the cover page of one of the transcripts of her testimony, which had been produced to the defendant months before (Transcript at 618-19).

Thus, taken individually or in the aggregate the alleged "errors" do not provide the basis for a new trial.

**Conclusion**

While the Court is empowered under Fed. R. Civ. P. 33(a) to vacate any judgment and grant a new trial if the interest of justice so requires, defendant Kurt Mix has not demonstrated either that the verdict was against the weight of the evidence or that some error was committed by the court or the prosecution which substantially affected his rights.  The Court has weighed the evidence and assessed the credibility of the witnesses, and the Court finds there is no basis for a new trial for the reasons lodged in this motion.   Moreover, no error was committed by the court or the prosecution which substantially affects the rights of the accused.  Accordingly,

**IT IS ORDERED** that Defendant's Rule  33 Motion for a New Trial Due to Deficient Evidence and Various Trial Defects (Doc. 711) is **DENIED**.

**IT IS FURTHER ORDERED** that the seventh line of the Order of December 10, 2013 (Doc. 672) be amended to read "thereof at Kinkos was outweighed by the **prejudicial nature thereof**. As a result, the Court ordered that it".

New Orleans, Louisiana, this  12th day of June, 2014.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**